844 So.2d 691 (2003)
Ernst Ludwig KIPP, Appellant,
v.
Sigrun KIPP, Appellee.
No. 4D02-1321.
District Court of Appeal of Florida, Fourth District.
April 23, 2003.
Rehearing Denied June 2, 2003.
*692 Elliot H. Scherker and Julissa Rodriguez of Greenberg, Traurig, P.A., Miami, for appellant.
Joel M. Weissman of Joel M. Weissman, P.A., Doreen M. Yaffa, P.A., Denise Calegan Desmond, P.A., West Palm Beach, for appellee.
DAMOORGIAN, DORIAN, Associate Judge.
Appellant, Ernst Ludwig Kipp ("former husband") timely appeals the "Final Judgment on Former Wife's Application For Contempt on Paragraph 4D and Exhibit A-1 of Marital Settlement Agreement Incorporated into Final Judgment." We disagree with the lower court and reverse.
The trial court entered a final judgment of dissolution of marriage, specifically incorporating a marriage settlement entered into between the parties. The agreement provided in paragraph 4D that as part of the equitable distribution, the former husband was to pay to the appellee, Sigrun Kipp, n/k/a Sigrun Kaliwoda ("former wife"), "[a]n additional sum up to TWO MILLION ($2,000,000) [DOLLARS] in cash at the time that the wife closes on any subsequent parcel of real estate which is used for the primary residence of the children."
Soon after the dissolution, the former wife purchased a house. The parties stipulated that the total purchase price of the house was $970,000.[1] The former husband wired funds in that amount to the former wife. Soon after closing, counsel for the former wife inquired as to whether the former husband had paid the former wife $2,000,000. Counsel for the former husband replied that the amount due under the agreement had been paid.
The former wife filed an application for civil contempt against the former husband for failure to pay the sum of $1,030,000 out of the $2,000,000 allegedly due under paragraph 4D of the agreement.
After a non-evidentiary hearing, the trial court entered a final judgment concluding that paragraph 4D of the contract was clear on its face and that the former husband was obligated to pay the former wife a total of $2,000,000 with respect to her purchase of a residence, regardless of the *693 amount actually paid by the former wife to purchase the residence.
The issue before us is whether the trial court erred, as a matter of law, in its interpretation of the agreement. "The interpretation of the wording and meaning of the marital settlement agreement, as incorporated into the final judgment, is subject to de novo review." McIlmoil v. McIlmoil, 784 So.2d 557, 561 (Fla. 1st DCA 2001); see also Coe v. Abdo, 790 So.2d 1276 (Fla. 4th DCA 2001)(holding that a marriage settlement agreement is to be construed as a matter of law). Moreover, absent any evidence that the parties intended to endow a special meaning in the terms used in the agreement, the unambiguous language is to be given a realistic interpretation based on the plain, everyday meaning conveyed by the words. McIlmoil, 784 So.2d at 561. Finally, a court must construe a contract in a manner that accords with reason and probability; and avoid an absurd construction. Katz v. Katz, 666 So.2d 1025, 1028 (Fla. 4th DCA 1996).
Here, the operative language in the provision in question is the phrase "up to." The phrase "up to" is a phrase of limitation used to set a cap or maximum amount contract. See Enter. Leasing Co. S. Cent., Inc. v. Hughes, 833 So.2d 832 (Fla. 1st DCA 2002)(holding that statute capped the amount of damages for the vicarious liability of the lessor of a vehicle where it stated that a lessor would be liable "only up to $100,000 per person and up to $300,000 per incident for bodily injury").
In the context of paragraph 4D the plain meaning of the phrase "up to" leads us to the inescapable conclusion that the phrase set a cap but not the amount the former husband would have to pay for the cost of the house to be purchased by the former wife.
The former wife argues that paragraph 4D does not state that the "up to" limitation correlates to the cost of the home to be purchased and that the words "the cost of the home actually purchased" would have to be added to the provision for the former husband to prevail. This additional modifier would not be necessary after a reading of the plain language of the provision. The term "up to" modifies the amount the former husband would have to pay. The provision implies that the husband could potentially pay $2,000,000 but only "up to" that amount.[2] Contrary to the former wife's argument, a proper reading of the agreement does not require that a modifier be added to the provision.
The fact that both sides ascribe different meanings to the language does not mean the language is ambiguous so as to allow the admission of extrinsic evidence. See Lambert v. Berkley S. Condo. Ass'n, 680 So.2d 588, 590 (Fla. 4th DCA 1996)(holding that a true ambiguity does not exist merely because a document can possibly be interpreted in more than one *694 manner). At trial, although each side interpreted the contract differently, both agreed it was unambiguous and requested the contract interpretation to be done as a matter of law. The former wife cites to parol evidence in the form of deposition testimony from herself discussing her intent that she was entitled to the entire $2,000,000. As the record makes clear, however, although the parties submitted a transcript of the dissolution proceedings along with the deposition testimony from the two parties, the trial court's ruling as to the issue before this court was based on the language of the agreement. This court has consistently held that parol evidence is not admissible where terms of a contract are complete and unambiguous. Bombardier Capital, Inc. v. Progressive Mktg. Group, Inc., 801 So.2d 131, 134 (Fla. 4th DCA 2001); McKay v. State Farm Fire and Cas. Co., 731 So.2d 852, 853, 855 (Fla. 4th DCA 1999). As we find no ambiguity in the language, it would be inappropriate for this court to consider parol evidence or remand this case for consideration of parol evidence. Bd. of Trs. of the Internal Improvement Trust Fund v. Lost Tree Vill. Corp., 805 So.2d 22, 26 (Fla. 4th DCA 2001).
We, therefore, reverse the final judgment of the trial court ordering the husband to pay $1,024,696.40.
GROSS and MAY, JJ., concur.
NOTES
[1] In their briefs, the parties rounded off the dollar amounts.
[2] Where the contract is susceptible to an interpretation that gives effect to all of its provisions, the court should select that interpretation over an alternative interpretation that relies on negation of some of the contractual provisions. Inter-Active Servs., Inc. v. Heathrow Master Ass'n, Inc., 721 So.2d 433, 435 (Fla. 5th DCA 1998). Here, if the parties had intended a blanket $2 million award, then paragraph 4D would have been worded like paragraphs 4A and 4B. For example, in paragraph 4A the former husband was to pay "the sum of THIRTEEN MILLION ($13,000,000) DOLLARS." The phrase "up to" appears nowhere else in the agreement other than in paragraph 4D. The inclusion of the language "up to" in paragraph 4D, however, distinguishes it from the other provisions and manifests an intent that an unspecified amount up to $2 million would be paid to the wife, depending on the value of the house.