STONE, J.
We affirm a summary final judgment entered in favor of the defendant/appellee, Connecticut Indemnity Co.
Jeb Travel was the victim of a theft in which over 4,500 “Automated Ticket Boarding Forms” (ATBFs) were stolen. ATBFs are used by travel agencies to furnish airline tickets to clients. They are issued and distributed by the Airline Reporting Corporation (ARC), a consortium of world airlines which also collects from *897 the travel agencies and distributes the proceeds to the airlines.
The relationship between ARC and Jeb Travel was regulated by an “Agent Reporting Agreement” (ARC agreement). Under the ARC agreement, a travel agency is only allowed to keep a maximum of two boxes of ATBFs at any given time on the business premises. At the time of the theft, Jeb Travel had a number of ATBFs equivalent to four boxes scattered throughout the office.
ARC unilaterally determined that the travel agency had been negligent and had failed to use reasonable care in safeguarding the ATBFs. Thus, ARC would not defend, or cover, Jeb Travel against the airlines’ demands for payment. Jeb Travel paid the claims and sought indemnification from Connecticut under terms of its insurance policy, identified as “Coverage C.”
Under Coverage C, Connecticut was obligated for up to $1 million for sums which the insured was legally obligated to pay as damages due to “any negligent act, error or omission” of the insured “in the conduct of ‘travel agency operations’ by the ‘named insured.’ ”
The policy also has exclusions providing that the policy does not apply:
(a) to liability assumed by the insured under any contract or agreement, ...
[[Image here]]
(q) under Coverage C, to any liability arising out of or contributed to by the co-mingling of the inability or failure to pay or collect any money whether such co-mingling or inability or failure be on the part of the “insured or others” but this exclusion shall not apply to errors in transmission of funds by the “insured” to others, ...
[[Image here]]
(r) under Coverage C, to “bodily injury”) “property damage” or “personal injury.”
The insurance policy also included an endorsement to specifically cover the ARC agreement. The endorsement indemnified Jeb Travel for losses up to a limit of $50,000, regardless of negligence or fault. The ARC endorsement protected:
for all “real loss sums” for which “named insured” shall become legally liable as determined by the “arbiter” of [ARC] under and in accordance with the latest “security rules and regulations” of the “agent reporting agreement.” Such liability must arise out of a “loss incident” which occurs or is alleged to have occurred during the policy period after the effective date of this endorsement at a “covered location.”
Supplementary payments. The company will pay, in addition to the applicable limit of liability, all expenses incurred by the company in negotiations with the “ARC” or any air transportation association carriers to determine agreed upon value of any loss to such carriers in determining “Real Loss Sums” payable under this coverage.
It also provides:
Limits of Liability. Regardless of the numbers of (1) carriers to which “real loss sums” are payable under this coverage or (2) ARC Traffic Documents lost or stolen in any single “loss incident” the company liability is limited [to $50,000] as follows:
The limit of liability stated in the schedule of this endorsement as the covered location limit of liability is the most we will pay for a single “loss incident” at any “covered location.”
It is undisputed that Connecticut is obligated for the $50,000 owed under the ARC *898 endorsement. Connecticut denies any duty to defend or pay further and denies liability under Coverage C.
We conclude that there is no ambiguity in the policy and that the trial court correctly reasoned that the airline claims were a consequence of the theft and not negligence by Jeb Travel in failing to comply with the ARC requirements limiting the number of ATBFs permitted on the premises. Also, the fact that ARC determined that Jeb Travel was negligent does not obligate Connecticut to defend under its policy terms or to reimburse Jeb Travel.
We have considered Merrill Crossings Associates v. McDonald, 705 So.2d 560 (Fla.1997), but deem it inapposite. In Merrill, the court held that a shopping center and its tenants were jointly and severally liable for failure to employ reasonable security measures that would have prevented the injuries suffered by a patron during a theft. Here, however, there was no negligence claim brought against Jeb Travel. The fact that ARC concluded that Jeb Travel violated its obligation under their contract does not make it a covered claim under Coverage C.
There was no error in interpreting the policy provisions in a manner that would give meaning to all aspects of the policy. Kipp v. Kipp, 844 So.2d 691 (Fla. 4th DCA 2003) (where a contract is susceptible to an interpretation that gives effect to all of its provisions, the court should select that interpretation over an alternative interpretation that relies on negation of some of the contractual provisions). Coverage C, on its face, provides coverage for suits against Jeb Travel for damages “because of ... any negligent act, error or omission of the insured.... ” It does not include liability for theft, a fortuitous event, not a negligent act of Jeb Travel, or its agents, causing injury to a claimant.
Therefore, the judgment is affirmed.
GUNTHER and STEVENSON, JJ., concur.