*974
 
 RAMIREZ, C.J.
 

 This is an appeal from an order granting the former wife’s pending motions. Because the trial court rewrote the parties’ settlement agreement and impermissibly amended prior orders of the court, we reverse.
 

 In the November 15, 2007 Final Judgment, the trial court ended Helio Rocha and Maria Ines Mendonca’s marriage. The dissolution was uncontested and the parties settled all matters with an October 24, 2007 marital settlement agreement that was ratified and approved by, but not merged with, the Final Judgment. In the agreement, Rocha was named Primary Residential Parent of the parties’ minor child, and no provision was made for payment of child support. Both parties waived any right to alimony and agreed to equitably divide Rocha’s retirement and 401(k) accounts from his employer, AXA. These accounts and the parties’ home were their chief marital assets, which were divided in the marital settlement agreement.
 

 Paragraph 7 of the marital settlement agreement, titled “Equitable Distribution”, included two subheadings titled “For the Wife” and
 
 “For the
 
 Husband.” For the wife, the parties agreed that:
 

 a. The Wife shall receive $270,000.00, by way of a Qualified Domestic Relations Order (QDRO) from the Husband’s AXA Retirement Plan;
 

 b. The Wife shall receive $140,000.00, by way of a Qualified Domestic Relations Order (QDRO) from the Husband’s 401(k); ,..
 

 Under the same subheading, the agreement called for Rocha’s forensic accountant expert, Philip Shechter, to prepare the two QDROs after the parties signed the marital settlement agreement. Also included under the sub-headings “For the Wife” and “For the Husband” were two congruent provisions concerning which party would be responsible for paying the utilities for the marital home pending its sale. The “For the Wife” provision stated:
 

 e. Upon transfer to the Wife of the first funds in either paragraph a or b above [the QDRO provisions], the Wife shall be solely responsible for the payment of all utilities (electric, water, sewer, gas, phone) for the home in which she is living, located at 7568 SW 189th Street, Miami, Florida, 33157, until same is sold. The Wife may remain in the home located at 7568 SW 189th Street, Miami, Florida, 33157 until ten (10) days prior to the closing for the sale of this home, at which time she must immediately vacate same.
 

 and the like provision under “For the Husband” stated:
 

 a. Until the transfer to the Wife of the first funds in either paragraph a or b of the preceding section (“For the Wife”), the Husband shall be responsible for the payment of all the utilities (electric, water, sewer, gas, phone) for the home in which the Wife is living that is to be sold.
 

 Finally, on page four of the marital settlement agreement, paragraph “a” under the heading “For the Husband” provided: “The husband shall retain all of his pension and retirement plans and other benefits from his employment (pension/retirement plan, 401(k), stock purchase plan, stock options, shareplans, etc.) other than set forth above.”
 

 Mr. Shechter, the forensic accountant, prepared both the 401 (k) and the Retirement Plan QDROs, which were then reviewed and approved by Ms. Mendonca’s attorney and submitted to the trial court. The trial court entered the 401 (k) QDRO November 15, 2007, and the Retirement Plan QDRO on January 8, 2008. Neither
 
 *975
 
 party appealed the Final Judgment, including the child custody or support provisions, or the QDROs.
 

 On March 26, 2008, Mendonca moved for an order to enforce the marital settlement agreement and to hold Rocha in contempt of its provisions. She had apparently learned that the Retirement Plan QDRO required a “triggering event” for her to gain access to the $270,000.00 from the plan. Such triggering event included Rocha’s retirement, disability, and his separation from service.
 

 Mendonca conceded that she had received the $140,000.00 as promised from Rocha’s 401 (k) QDRO, but contended that it was never the parties’ intent that she should have to wait to receive the $270,000.00 from Rocha’s Retirement Plan. She asked the trial court to use its reserved jurisdiction to enforce the marital settlement agreement by making Rocha pay $270,000.00 from his post-dissolution assets or, in the alternative, by setting the marital agreement agreement aside, along with Mendonca’s alimony waiver.
 

 The trial court heard Mendonca’s contempt motion and concluded, after reading the marital settlement agreement, that the parties intended for Mendonca to receive immediate, unrestricted access to the $270,000.00 from the Retirement Plan. The judge explained that he reached his conclusion by relying upon the wording of the Utilities Provisions, particularly “Upon transfer to the Wife of the first funds in either a or b above, the Wife shall be solely responsible for ... ” and “Until transfer to the Wife of the first funds in either paragraph a or b in the preceding section ...”
 

 Accountant Philip Shechter testified that the Retirement Plan QDRO had been prepared consistent with the plan because it used the Plan Administrator’s prototype format. He explained that the $270,000.00 payment by the Retirement Plan QDRO was a “payment in the future” taken from a future balance in the account and predicated upon a future event, while the 401 (k) fund was a present fund in actual, present existence, meaning 401 (k) assets could be immediately transferred. Thus, the AXA Retirement Plan was not amenable to a 401 (k) transfer-type payout, so as to give Mendonca a $270,000.00 immediate payment, as that amount represented a payment of future money.
 

 At a subsequent hearing, it became clear that Mendonca would not be allowed to immediately access the $270,000.00 through the Retirement Plan’s rules. Shechter again testified that although the Plan had a value in excess of $270,000.00, there had not been a distributable cash balance in the plan of $270,000.00 when the marital settlement agreement was entered into. The qualified component totaled $178,000.00 and could be transferred to Mendonca by QDRO when Rocha retired or when he turned 55 years old on December 27, 2011. However, the $92,000.00 remaining in the account was a non-ERISA, unqualified portion of the plan that could not be transferred through a QDRO. This amount functioned as income for the calendar year in which it was dispensed and would be given directly to Rocha and only upon his retirement.
 

 After hearing the arguments, the trial judge made his ruling contained in twenty-three pages of transcript. The Final Order states that “the Ruling of this Court is contained in the attached transcript.” We are thus left to scour through the transcript to ascertain the courts’s ruling. It appears that he ordered the balance of Rocha’s 401 (k) to be transferred to Men-donca with a new QDRO. He also ordered an amended Retirement Plan QDRO to be issued, one that specified that Mendonca would receive one hundred per
 
 *976
 
 cent of the qualified portion of the account, up to a maximum of $270,000.00, minus the amount he ordered transferred from the 401 (k) account. He further ordered the parties to place the Retirement Plan administrator on notice that Mendon-ca had a claim on any of the unqualified portions of the Retirement Plan account needed to satisfy that portion of the $270,000.00 not paid by the qualified portions of the account, minus the amounts transferred from the 401 (k) account. He further ordered Rocha not to dispose of, dissipate, or liquidate any of these unqualified and extra-QDRO portions until Men-donca’s total distribution was satisfied. When Rocha’s counsel pointed out that Mendonca would be responsible for taxes on any amount she received from the unqualified portion of the Retirement funds, the judge stated that his ruling did not cover future tax issues. As to any interest, the judge ruled that failing to provide Mendonca with interest on the $270,000.00 provided Rocha with a windfall. He reasoned that the Retirement Plan QDRO had been consistent with the marital settlement agreement, and the Retirement Plan’s regulations with the marital settlement agreement, the $270,000.00 would have been segregated to Mendonca, in which case Rocha would not be receiving interest on the amount. Hence, he reasoned the amended Retirement Plan QDRO should be made to apply to the $270,000.00, less amounts received from Mr. Rocha’s post-judgment 401(k) amounts, plus or minus any earnings, appreciation, or depreciation on the account. He reserved jurisdiction to decide which party would incur the tax liability on any unqualified portion of the Retirement Plan account that might be paid to Mendonca to reach the $270,000.00 total.
 

 We review questions of law, including those pertaining to contract interpretation,
 
 de novo. See Witt v. La Gorce Country Club, Inc.,
 
 2009 34 Fla. L. Weekly D1161 (Fla. 3d DCA June 10, 2009). We agree with Rocha that the Motion for Enforcement/Contempt should have been denied as there was nothing in this case to enforce. The marital settlement agreement called for Mendonca to receive $270,000.00 by way of a QDRO and that is what the Retirement Plan QDRO will accomplish. The trial court instead gave Mendonca relief not contemplated under the marital settlement agreement, such as $20,800.00 of Rocha’s post-dissolution 401(k) contributions and the accrued earnings on her unpaid portion of the Retirement Plan. “[W]hen a court incorporates a settlement agreement into a final judgment or approves a settlement agreement by order and retains jurisdiction to enforce its terms, the court has the jurisdiction to enforce the terms of the settlement agreement ... [h]owever, the extent of the court’s continuing jurisdiction to enforce the terms of the settlement agreement is circumscribed by the terms of that agreement.”
 
 Paulucci v. Gen. Dynamics Corp.,
 
 842 So.2d 797, 803 (Fla.2003). Although a trial court may be motivated to do what it considers to be fair and equitable, it retains no jurisdiction to rewrite the terms of a marital settlement agreement. Under the guise of enforcing the agreement, the trial court here impermissibly modified it.
 

 The agreement does not establish that the parties intended for Mendonca to have immediate and unrestricted access to the $270,000.00 from Rocha’s Retirement Plan. The provisions dealing with utilities did not set forth the parties’ property distribution scheme; they merely established when Mendonca would be responsible for paying for the marital home’s utility bills.
 

 In reaching its conclusion, the trial court relied solely on the following language: “Upon transfer to the Wife of the first funds in either paragraph a or b above.”
 
 *977
 
 In particular, the court believed that the parties’ use of the word “funds” in relation to “paragraph a or b” established their intent for Mendonca to immediately receive the $270,000.00 from the retirement plan.
 

 It is undisputed that both the 401 (k) and Retirement Plan QDROs would transfer their specified amounts from Rocha’s accounts to Mendonca, but there is nothing in that definition that can be read as containing a time limitation. Both parties approved the QDRO dealing with Rocha’s retirement plan after reviewing the retirement plan rules. The QDRO clearly indicated that payment was conditioned upon Rocha reaching his “earliest retirement age”.
 

 We thus conclude that the trial court’s interpretation of the marital settlement agreement and the two QDROs is not supported by the language of the agreement or the orders.
 
 See Maher v. Schumacher,
 
 605 So.2d 481 (Fla. 3d DCA 1992). Accordingly, we reverse the trial court’s December 12, 2008 Final Order on Former Wife’s Pending Motions. We further remand with instructions to the trial court that judgment be entered in favor of Rocha regarding the issues addressed in this appeal and consistent with this opinion.