PER CURIAM.
The former wife, Ellen Sue Reilly, and the former husband, George Reilly, mediated and entered into a Marital and Property Settlement Agreement (MSA) which was ratified by the trial court in the Final Judgment of Dissolution of Marriage. Two years later, the former wife filed her Motion for Contempt and to Compel Compliance with Final Judgment requesting that the trial court order the former husband to pay four separate claims he had not paid pursuant to the terms of the MSA plus her attorney’s fees. Before the hearing on the motion, the parties resolved two of the claims. On the claims heard by the trial court, it ordered the former husband to pay the sum of $15,177 for equitable distribution. The trial court denied the former wife’s claim that the former husband pay half of the amount paid by the former wife to resolve a dispute the parties had with a roofing company which repaired the roof of the marital home. The trial court also denied the former wife’s claim for attorney’s fees because it found that each party won on one issue. The former wife appeals the denial of her claim for half the roofing expenses. We reverse. The former husband cross appeals the order that he pay the equitable distribution. We affirm. Both parties appeal the denial of attorney’s fees. We reverse and remand for an award of attorney’s fees pursuant to the MSA.
Prior to the dissolution, the roof of the marital home needed repair. During the repair, the roof was left uncovered and a torrential rain caused flooding and damage to the home. The roofer claimed the damage was preexisting. The roofer claimed the parties still owed $6000. Before the dispute was resolved the parties entered into the MSA. It provides in relevant part:
The parties agree to the following equitable distribution scheme:
A. Marital Home
The parties own jointly the marital home located at 355 Prairie Rose Lane, Boca Raton, FL 33487. The parties agree to immediately list for sale the marital home. Neither party shall unreasonably *696 withhold their consent to reduce the listing price of the home by 5% or less at 80 day intervals after an initial 90 day period. The parties shall equally be responsible for paying the mortgage and expenses related to the home and its sale, including but not limited to the prepayment penalty from their 2005 refinancing, real estate taxes, assessment, association fees, and insurance until it is sold. The parties shall also resolve their roofing dispute with Tim Graboski Roofing at the closing on their home.
In the event the Wife decides to vacate the marital home, she shall contribute one half of the mortgage payment until the home is sold.
Prior to the sale of the marital home, the former wife received a lien from the roofing company. Because they could not sell the house with a lien on it, the former wife, with the help of her attorney, resolved the dispute. The amount owed was reduced to $4500, which the former wife paid. The marital home was subsequently sold.
On the former wife’s claim for half of this amount based upon the MSA provision that the parties are equally responsible for paying the expenses related to the home and its sale, the trial court found “that the Former Husband did not have the benefit of making a decision of paying the debt and therefore the debts [sic] falls solely to the Former Wife.”
“The interpretation of the wording and meaning of the marital settlement agreement, as incorporated into the final judgment, is subject to de novo review.” Kipp v. Kipp, 844 So.2d 691, 693 (Fla. 4th DCA 2003) (quoting McIlmoil v. McIlmoil, 784 So.2d 557, 561 (Fla. 1st DCA 2001)). “It is well settled that a marital settlement agreement is to be interpreted like any other contract and is construed as a matter of law.” Coe v. Abdo, 790 So.2d 1276, 1279 (Fla. 4th DCA 2001). “[A] court must construe a contract in a manner that accords with reason and probability; and avoid an absurd construction.” Kipp, 844 So.2d at 693.
The purpose of the MSA provision was to sell the marital home as soon as possible. The parties were equally responsible for paying the expenses related to the home and its sale. Any dispute concerning the roof and the lien filed had to be resolved before the closing for the sale of the house, not at the closing. The parties’ dispute with the roofer was resolved, albeit before the closing. The MSA required that the dispute between the parties and the roofer be resolved, not that they both make the decision to resolve the dispute. Therefore, the former husband is liable to the former wife for half of $4500 and we reverse the trial court’s determination otherwise.
In his cross-appeal, the former husband argues that the trial court erred in ordering him to pay $15,177 as and for equitable distribution. He asserts that it was a condition precedent to that payment that the monies are paid from the proceeds of the sale of the marital home and the trial court modified the contract by ordering him to pay from some other source. He concludes that because the sale of the parties’ marital home did not produce any proceeds, he does not owe this amount to the former wife.
The second section of the Equitable Distribution of Assets and Obligations paragraph of the MSA provides:
B. Husband’s IRA and Retirement Accounts
The Husband shall keep as his sole and exclusive property his IRA account with Charles Schwab. The Husband agrees to pay the Wife $15,177 from his share of the closing proceeds as and for equitable distribution. Each party shall *697 keep as their sole and exclusive property their own Florida FRS Retirement Accounts free of any claims from the other.
C. CASH
The Wife shall keep as her sole and exclusive property her Charles Schwab One Account free of any claims from the Husband. Each party shall keep any accounts currently in their own name as their sole property free of any claims from the other. The wife shall keep as her sole and exclusive property the current joint account with Washington Mutual free of any claims from the Husband.
In Chipman v. Chipman, 975 So.2d 603 (Fla. 4th DCA 2008), this court addressed the principle of conditions precedent as follows:
The trial court’s interpretation of a contract is a matter of law subject to a de novo standard of review. In In re Estate of Boyar, 592 So.2d 341 (Fla. 4th DCA 1992), this court explained:
As a general rule, conditions precedent are not favored, and the courts will not construe provisions to be such, unless required to do so by plain, unambiguous language or by necessary implication. 17A Am. Jur.2d Contracts § 471 (1991). Some of the rules of construction associated with determining whether a doubtful provision is a condition precedent are set forth in Hohenberg Bros. Co. v. George E. Gibbons & Co., 537 S.W.2d 1 (Tex.1976), wherein the court said:
Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty. While no particular words are necessary for the existence of a condition, such terms as “if’, “provided that”, “on condition that”, or some other phrase that conditions performance, usually connote an intent for a condition rather than a promise. In the absence of such a limiting clause, whether a certain contractual provision is a condition, rather than a promise, must be gathered from the contract as a whole and from the intent of the parties. However, where the intent of the parties is doubtful or where a condition would impose an absurd or impossible result then the agreement will be interpreted as creating a covenant rather than a condition.
In re Estate of Boyar, 592 So.2d at 343.
Chipman, 975 So.2d at 607.
In the equitable distribution provision entitled Husband’s IRA and Retirement Accounts, there are no phrases of conditional performance. The former husband agreed to pay the former wife $15,177 as and for equitable distribution. Payment from the closing proceeds is not a condition precedent, only a source for the payment. The MSA was entered into more than a year before the parties sold the marital home so the parties did not know how much the proceeds of the sale would be. The MSA is silent as to what would happen if the proceeds were not enough but the $15,177 is specifically labeled as and for equitable distribution and is owed to the former wife. The trial court did not err in ordering the former husband to pay the former wife $15,177 as and for equitable distribution. We affirm the former husband’s cross appeal of this issue.
Both parties argue that they were entitled to attorneys’ fees pursuant to the attorneys’ fees provision in the MSA. Paragraph 15 of the MSA provides:
ATTORNEYS’FEES. The parties hereby acknowledge that they have become indebted to their attorneys and with re *698 gard to fees, costs and expenses incident to the preparation and negotiations concerning this Agreement and the dissolution of marriage. Each party agrees to be responsible for his or her own attorneys’ fees, costs, suit monies and such incurred in connection with this Agreement and dissolution of marriage.
Except as otherwise provided in this Agreement, should either party to this Agreement default in his or her obligation hereunder, the party in default shall be liable to the other party for all reasonable expenses, including attorney’s fees, incurred by the other party with regard to the enforcement of the obligations created in this Agreement, whether suit be brought or not.
The trial court did not award attorneys’ fees to either party based upon its finding that each party prevailed on one issue. We find it unnecessary to address the former wife’s argument that this was error because we are reversing as to the former husband’s liability for his share of the roofing expenses. Therefore, the former wife prevailed on all issues before the trial court. We remand for the trial court to award the former wife her attorneys’ fees.

Affirmed in paid; reversed in part and remanded for further proceedings.

GROSS, HAZOURI and CONNER, JJ„ concur.