WARNER, J.
The trial court entered a qualified domestic relations order (“QDRO”) to distribute to appellee, former wife, one-half of the husband’s 401 (k) plan with his employer based upon a mediated agreement between the parties. The order directed the inclusion of the value of outstanding loans *940 taken out by the former husband in the calculation of the former wife’s share of the account. The husband contends that the court erred in including the loans in calculating the amount to be distributed, because this would result in the wife receiving more than half of the balance and would leave the corresponding loan repayment obligation as an undistributed marital liability. We agree that the order should not have directed inclusion of the outstanding loans in the balance subject to distribution to the former wife and reverse.
At the time the parties were married in 1997, the husband had a 401(k) retirement account with his employer. Throughout the parties’ marriage, the account grew due to additions and earnings, and the husband took loans against the balance. After the parties began divorce proceedings in 2011, they mediated their differences. As to the retirement account, the mediated settlement provided:
The husband has a 401K with his employer. The parties agree that the wife is entitled to half of the marital portion of this retirement plan. The parties agree that the wife is entitled to 50% of the amount accumulated from the date of the marriage through January 1, 2008. The wife will be entitled to a Qualified Domestic Relations Order transferring her share of the plan as described above. The parties agree and acknowledge that loans and [withdrawals] taken during the marriage and not repaid will be taken into account for distribution purposes. The husband will cooperate with providing the wife any and all necessary documents reasonably requested in order to have the Qualified Domestic Relations Order Prepared. The parties will equally share in the cost of the preparation of the Qualified Domestic Relations Order.
The agreement also noted that the parties had divided all of their other personal property. It provided for some bridge-the-gap alimony and child support as well as a parenting plan. The wife was represented in the proceedings; the husband was not.
The trial court incorporated the mediated settlement in its final judgment and reserved jurisdiction to enforce, interpret, or modify the terms of the final judgment and agreement. A couple of months after the final judgment, the wife submitted a proposed QDRO to the court, which the court signed. No copy was provided to the husband either prior to or after its execution. In the section designated “Benefit Payable To The Alternate Payee — Defined Contribution Plan(s),” the order assigned “to the alternate payee an amount equal to 50% of the participant’s vested account balance under the Plan ... as of January 1, 2008.” The court checked the box on the order which provided that amount assigned to the alternate payee “[w]ill include earnings and losses” and that the “participant’s vested account balance ... [w]ill not be reduced by the value of outstanding loans before the alternate payee’s portion of the benefit is determined.” The order defines the “vested account balance” as “the participant’s benefit as if he or she terminated employment and received a distribution on the valuation date.”
Pursuant to the order, the plan administrator made distribution. The former husband received a letter from the administrator that the total market value of the assets transferred to the account established for the alternate payee (the former wife) was $47,505.96. The letter stated: “The QDRO provides that the Alternate Payee is entitled to 50% of the above referenced account as of 01/01/2008, plus earnings (or minus losses) through the *941 date of segregation.” An account summary following the $47,505.95 transfer indicates an ending balance to the former husband’s 401(k) account at $13,697.43 with an outstanding loan balance of $35,311.53.[1]
Believing that the loan amount was not to be calculated in the distribution to the former wife, the former husband filed a motion for relief from the order based upon mistake or fraud. He claimed that he had never received a copy of the proposed order or the executed order and had not approved its terms. Its terms did not comport with the settlement agreement, because the agreement provided that the loans would be taken into account in determining the accumulated balance, not added to the balance in his account.
The trial court held a hearing and determined first that the agreement was ambiguous as to how to treat the loans. The court then heard testimony from both the former husband and former wife. The husband introduced into evidence a statement from his plan administrator from the plan’s commencement through January 1, 2008, the valuation date for purposes of the QDRO. That statement showed an “Ending Balance” of $60,734.50. As part of that balance, the statement included the amount of loan repayments. In another part of the statement, as “additional information” it listed the “Vested Balance” as $60,734.50 and listed “outstanding loans” as $25,048.90. It then states: “Loans are an asset of your account but are not included in your ending balance.”
The husband testified that he took several loans from his plan to support the parties’ lifestyle. When he agreed to give the wife 50% of the plan amount accrued during the marriage, he believed that it would be the balance and not include any outstanding loans he had taken from the plan and not paid back. The wife testified that while she knew about the husband’s 401 (k) plan, she had not seen any plan statements. She knew that the husband had taken loans against the plan and did not contradict his claim that these were to support their lifestyle. Her understanding of the agreement was that she would get 50% of the amount of the plan and that the loans would be included. However, when questioned by her own attorney, she then stated “I thought.... the paid loans would be back in there.” (emphasis supplied).
Following argument of counsel, the court denied relief to the former husband. It determined that the agreement required the inclusion of the outstanding unpaid loans in the distribution to the wife. It found:
The sentence is paragraph 3 of the Mediated Settlement Agreement which states “The parties agree and acknowledge that loans and withdrawals taken during the marriage and not repaid will be taken into account for distribution purposes” has to be qualified by the previous sentence which states “The parties agree that the wife is entitled to 50% of the amount accumulated from the date of the marriage through January 1, 2008”, and this is a gross number to the Court.
From this order, the former husband appeals.
The former husband argues that the trial court erred in interpreting the agreement by determining that the QDRO order correctly included outstanding loans before calculating the distribution due to the former wife, providing her with substantially *942 more of the 401(k) account than the former husband. “ ‘The interpretation of the wording and meaning of the marital settlement agreement, as incorporated into the final judgment, is subject to de novo review.’ ” Reilly v. Reilly, 94 So.3d 693, 696 (Fla. 4th DCA 2012) (quoting Kipp v. Kipp, 844 So.2d 691, 693 (Fla. 4th DCA 2003)).
A marital settlement is construed in accordance with its terms, as with any contract:
[w]here the terms of a marital settlement agreement are clear and unambiguous, the parties’ intent must be gleaned from the four corners of the document. It is only when a term in a marital settlement agreement is ambiguous or unclear that the trial court may consider extrinsic evidence as well as the parties’ interpretation of the contract to explain or clarify the language.
Jones v. Treasure, 984 So.2d 634, 636 (Fla. 4th DCA 2008) (quoting Levitt v. Levitt, 699 So.2d 755, 756 (Fla. 4th DCA 1997)). On review, the appellate court considers whether the contractual provision was actually ambiguous; if not, “the language itself is the best evidence of the parties’ intent, and its plain meaning controls.” Richter v. Richter, 666 So.2d 559, 561 (Fla. 4th DCA 1995) (citing Fecteau v. Se. Bank, N.A., 585 So.2d 1005, 1007 (Fla. 4th DCA 1991)). In determining whether a provision is ambiguous, the court should consider “a reading of the entire agreement [to] clarify what the parties meant” by including the provision. Bacardi v. Bacardi, 386 So.2d 1201, 1203 (Fla. 3d DCA 1980). A provision is ambiguous if “it is fairly susceptible to different constructions.” Mariner Cay Prop. Owners Ass’n, Inc. v. Topside Marina, Inc., 714 So.2d 1130, 1132 (Fla. 4th DCA 1998).
The parties agreed in their mediated settlement to a distribution to the former wife, through a QDRO, of one-half of the marital portion of the former husband’s retirement account. They defined that as 50% of the amount accumulated from the date of their marriage to January 1, 2008. They qualified that amount by stating “that loans and [withdrawals] taken during the marriage and not repaid will be taken into account for distribution purposes.”
The trial court found that the agreement was ambiguous, because the phrase “taken into account” could have several meanings. It therefore allowed the testimony of both the former husband and former wife. In sum, however, their testimony was consistent. The former husband testified that the loans he had taken from his account were all used to fund the parties’ lifestyle and to the extent that they were still unpaid they were not intended to be included in the accumulated total of the account. The former wife testified that she knew about the loans and thought that they had been repaid. She testified that her understanding was that loans which had been repaid would be included in the amount due to her. According to the plan statement introduced in evidence, the repayments on loans increased the account and were part of the ending balance of $60,734.50. Thus, both parties agreed that paid loans, not unpaid loans, would be part of the distribution. The trial court overlooked the testimony of the former wife in denying relief from the QDRO. Thus, its interpretation of the provision was contrary to the understanding of the parties.
The parties’ interpretation is consistent with an equitable distribution of the 401(k) plan as a marital asset through a QDRO. “A QDRO is, in pertinent part, a ‘domestic relations order ... which creates or recognizes the existence of an alternate payee’s right to, or assigns to an alternate *943 payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan.’ ” DeSantis v. DeSantis, 714 So.2d 637, 638 (Fla. 4th DCA 1998) (quoting 29 U.S.C. § 1056(d)(3)(B)©). “Thus, a QDRO is intended to protect one spouse’s right to the other’s pension or profit sharing plans by recognizing that spouse’s entitlement to a portion of the future payments.” Id. Regarding QDROs, this Court has explained that “a retirement pension must be viewed as a marital asset, but only the marital portion may be equitably distributed.” Blaine v. Blaine, 872 So.2d 383, 384 (Fla. 4th DCA 2004) (citing Bogard, v. Bogard, 490 So.2d 43 (Fla.1986)).
A participant may take loans and withdrawals from a 401 (k) account. The only Florida case involving a loan against a retirement plan is Kadanec v. Kadanec, 765 So.2d 884 (Fla. 2d DCA 2000). There a husband argued that the trial court erred in including a $15,000 loan as part of the value of the retirement account, similar to what has occurred in this case. The appellate court rejected his claim, because the proceeds of the loan were used by him to purchase a home for himself in North Carolina. Thus, he retained the benefit of the $15,000 loan proceeds.
Kadanec’s reasoning supports the exclusion of the outstanding loans from the value of the retirement account in this case. Here, the loans were used to support the parties’ lifestyle, and both parties received the benefit from the loans. Because they both received the benefit of the loans, the loans should be excluded from the accumulated amounts to the extent that they are unpaid.
Moreover, if the loans were an asset of the retirement account, then they represent a corresponding liability of the former husband, as they must be repaid by the plan participant. Because these loans were incurred during the marriage and for a marital purpose, they are presumed to be a marital debt. See generally § 61.075, Fla.' Stat. (2012). Thus, if the loans are treated as assets of the retirement account subject to distribution, then they should be offset by the marital liabilities created. If they are not treated as part of the retirement account, then the marital liabilities need not be considered. In other words, both the marital asset and marital liabilities should be included in the distribution, or neither should be included. The latter solution is consistent with not considering the amount of the outstanding loans when calculating the distribution of the 401 (k) through the QDRO.
Smilack v. Smilack, 858 So.2d 1072 (Fla. 5th DCA 2003), provides an analogous situation to this case. In a dissolution judgment, the trial court awarded the former wife the marital residence including its equity but offset that by requiring her to repay a promissory note jointly executed by both husband and wife and to pay to the husband a sum of cash. The wife failed to pay the husband the cash or pay the note. In an enforcement action, the trial court granted the husband a judgment for the amount of cash due but refused to include the amount of the promissory note which the husband had to pay to a third party.
On appeal, the Fifth District noted that “[t]o enforce a prior judgment, a court may modify a final judgment to provide for reimbursement for a party’s share of marital debts.” Id. at 1075 (citing Kennedy v. Kennedy, 638 So.2d 577 (Fla. 3d DCA 1994)). The court concluded that “a dissolution judge must equitably distribute the parties’ assets and liabilities pursuant to section 61.075, Florida Statutes (1997).” Id. Failing to give relief to the husband for his payment of the note would have upset the equitable distribution scheme of the *944 final judgment, which would be an impermissible modification. Id.
The same principle applies to the treatment of the outstanding unpaid loans in this case. If they are treated as assets but not as offsetting liabilities, the equitable distribution of the retirement account is upset, and the former wife receives substantially more than the former husband from the retirement account. Yet the parties’ intent as expressed in the mediated agreement is that they will divide the balance of the account.
In denying relief, the trial court overlooked the consistent testimony from the parties that only paid loans would be added back to the account. Including the outstanding loan balances in the amount to be distributed to the former wife would result in an inequitable distribution and windfall to her and would leave undisposed the marital liabilities represented by the loans. Interpreting the agreement to exclude the outstanding loans would dispose of both the loans as assets and the corresponding liabilities, as they offset each other. We therefore reverse and remand for the court to grant the motion and modify the QDRO to provide that outstanding unpaid loans, as they existed on the date of valuation (January 1, 2008), will not be included in the distribution to the former wife.

Reversed and remanded.

CONNER, J., and LEVENSON, JEFFREY R., Associate Judge, concur.

. It appears that the administrator may have erroneously included the amount of outstanding loans at the date of distribution rather than the amount as of the valuation date of January 1, 2008.