DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANGEL FELICIANO,**
Appellant,

v.

**WANDA MUNOZ-FELICIANO,**
Appellee.

No. 4D14-3242

[May 4, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Nicholas Lopane, Judge; L.T. Case No. 12-00646 33 98.

Catherine L. Roselli, Fort Lauderdale, for appellant.

Nancy A. Hass of Nancy A. Hass, P.A., Hallandale Beach, for appellee.

FORST, J.

Appellant Angel Feliciano appeals the entry of a deficiency judgment ordering him to pay additional monies to Appellee Wanda Munoz-Feliciano, his former wife. Because Appellant correctly argues that the trial court's order contradicts the terms of the marital settlement agreement between the parties, we reverse.

**Background**

Appellant and his ex-wife divorced in 2012 and entered into a marital settlement agreement (MSA). The parties agreed to sell the marital home and split any proceeds equally. The parties further agreed "[i]t is the goal of the Parties to avoid paying any shortfall or deficit in the event the outstanding balances on the mortgage on the Residence are greater than the proceeds of the sale." Under the agreement, the wife had exclusive use and possession of the marital home until its sale. While she was living in the home pending sale, the wife was responsible for paying the first mortgage on the property, while Appellant paid the home equity line of credit (HELOC), an installment loan, and alimony payments to the wife. Each spouse was "entitled to credit or reimbursement from the other party's share of the proceeds [of the sale of the home] for one-half (1/2) of

the payments that he or she made on the first mortgage, HELOC, and the installment loan" from the divorce through the date of the sale.

The wife ultimately made payments of approximately $125,000 toward the first mortgage while living in the home. Appellant paid approximately $25,000 toward the HELOC and installment loan during the same period. The sale of the residence netted proceeds of approximately $64,000.

The wife moved for an order to enforce the MSA and determine the disposition of the sale proceeds. Appellant agreed the wife was entitled to all of the proceeds of the sale, but the trial court found the wife was entitled to additional funds and entered a judgment against Appellant in the amount of $18,161.77. Appellant appeals, arguing the terms of the marital agreement limited the wife's recovery to the monies received from the proceeds of the sale of the home.

## Analysis

"The interpretation of the wording and meaning of the marital settlement agreement, as incorporated into the final judgment, is subject to de novo review." *Reilly v. Reilly*, 94 So. 3d 693, 696 (Fla. 4th DCA 2012) (quoting *Kipp v. Kipp*, 844 So. 2d 691, 693 (Fla. 4th DCA 2003)). A marital settlement agreement is interpreted like any other contract. *Id.* "[A]bsent any evidence that the parties intended to endow a special meaning in the terms used in the agreement, the unambiguous language is to be given a realistic interpretation based on the plain, everyday meaning conveyed by the words." *Kipp*, 844 So. 2d at 693. Courts are not to rewrite terms that are "clear and unambiguous." *Cole v. Cole*, 95 So. 3d 369, 371 (Fla. 3d DCA 2012).

There are two key provisions of the contract pertinent to the dispute in this case. First, the parties established a clear intent "to avoid paying any shortfall or deficit" as a result of the contract. The terms of the contract state that the parties wished to avoid a deficit "in the event the outstanding balances on the mortgage on the Residence are greater than the proceeds of the sale." However, these statements appear to be contradictory—if the outstanding balance owed to the mortgage lender is greater than the proceeds of the sale, a deficit already exists. A more reasonable construction of this language is a general preference against deficit payments *to the other party* arising from the mortgage.

More importantly, the contract states that the parties "are entitled to credit or reimbursement *from the other party's share of the proceeds . . .*" (emphasis added). The plain meaning of this phrase is clear—

2

reimbursement comes from the proceeds of the sale. There is no alternative source of funding provided, nor does the contract allow for a deficiency in the event the proceeds are insufficient to fully compensate the creditor spouse. Had the parties intended this to be a general debt obligation, such a contract would have been simple to craft, as they simply could have omitted the "from the other party's share of the proceeds" clause. Given that the parties chose to include this language in the contract, it must be given some meaning. Here, that meaning is clear.

The wife argues the MSA requires that she receive reimbursement for half of her payments, regardless of the source of the funds. As discussed above, the plain terms of the contract do not compel such an outcome. Nor does our earlier holding in *Reilly* require reversal.

In *Reilly*, a divorcing couple entered into an MSA which required the husband to pay the wife a sum "from his share of the closing proceeds [from the sale of the marital home] as and for equitable distribution" in exchange for his retention of his full IRA account in the equitable distribution of the marital assets. *Reilly*, 94 So. 3d at 696. Although the sale of the home was insufficient to provide for the husband's payment to the wife, the trial court ordered the husband to pay the sum from another source. *Id.* at 696. We affirmed, explaining that the clause mandating payment "from . . . the closing proceeds" did not create a condition precedent, but merely established a source for the payment. *Id.* at 697. While the contract in *Reilly*, like the one at issue here, was "silent as to what would happen if the proceeds were not enough," the payment in that case was "specifically labeled as and for equitable distribution and is owed to the former wife." *Id.*

The current case is distinguishable. In *Reilly*, the debt owed to the wife was in exchange for the receipt of the husband's full IRA in the equitable distribution, wholly apart from the use or sale of the home, and the trial court's order requiring payment was necessary to effectuate a fair settlement. Here, on the other hand, Appellant did not owe any debt to the wife arising from the divorce that would require payment from another source in order to create an equitable distribution.

We further note that interpreting the contract to prevent the entry of a deficiency judgment would not result in an unjust or absurd construction. While our interpretation results in the wife being responsible for more than half the mortgage payments during the period prior to sale of the home, she had exclusive possession and use of the home during the approximately twenty-month period between the divorce and the sale of the home. Reading the plain terms of the contract to place the risk of

3

unequal payments on the sole occupant of the home is not inherently unfair.

## Conclusion

The plain meaning of the terms used in the contract specify that payment from Appellant to the wife is to be made "from [his] share of the proceeds" of the sale of the marital home. This clause, combined with the parties' stated goal of avoiding deficit payments, leads to the conclusion that the contract envisioned the sale proceeds as the exclusive source of payments under the contract. Because the contract does not authorize deficiency judgments, the trial court's entry of such an order was erroneous and is therefore reversed.

*Reversed and remanded.*

STEVENSON and GROSS, JJ., concur.

\*       \*       \*

***Not final until disposition of timely filed motion for rehearing.***