DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**VICTOR H. WAITE,**
Appellant,

v.

**JACLEN A. MILO-WAITE,**
Appellee.

No. 4D22-423

[April 5, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Renatha Francis, Judge; L.T. Case No. 502021DR003548.

Matthew S. Nugent and Adam M. Zborowski of The Law Offices of Nugent Zborowski, North Palm Beach, for appellant.

Jack B. Pugh of Pugh and Associates, P.A., West Palm Beach, for appellee.

FORST, J.

Appellant Victor H. Waite ("Former Husband") challenges several calculations, findings, and conclusions with respect to the trial court's final judgment of dissolution of marriage ("the final judgment"). We agree with Former Husband that the trial court erred in making several findings in conflict with the parties' pretrial stipulations and partial marital settlement agreement, and further erred in holding that a $16,620.47 payment received by Former Husband during the parties' separation was "willfully concealed or undervalued." We thus reverse and remand for the trial court to recalculate the amount of alimony and child support awarded to Appellee Jaclen A. Milo-Waite ("Former Wife") and make additional modifications to the final judgment as set forth below.

**Background**

After twelve years of marriage to Former Wife, Former Husband filed a "Petition for Dissolution of Marriage with Minor Children." Former Wife filed an answer and a counterpetition, seeking equitable distribution, alimony, shared parental responsibility, majority timesharing, and child support.

Shortly thereafter, the parties filed a mutually agreed upon parenting plan (the "Parental Plan") that provided, in part, that "[t]he parties shall share the

costs of uncovered medical expenses . . . costs of school field trips . . . [and] costs of school supplies, including uniforms, pro rata." They also entered into a partial marital settlement agreement ("PMSA"), which stated "the [p]arties intend this Agreement to be a final and complete settlement of their property rights and obligations to one another, including their rights and obligations concerning equitable division of property." The PMSA declared that alimony and child support determinations would "be addressed by a separate agreement or Final Judgment at a later time."

The PMSA further provided several clauses on the parties' disclosure of assets. It explained that each party was satisfied with the other party's disclosure regarding their income, assets, liabilities, and expenses, and that, "[t]o the extent, if any, the [p]arties are unaware of the full nature and extent of the income, assets, liabilities and expenses of the other, they waive their right to full disclosure thereof and release their respective counsel from the duty of making full and further inquiry." However, "[i]n the event that any marital property has been willfully concealed or undervalued by one of the [p]arties, the [p]arty concealing the property or undervaluing the property shall pay to the other [p]arty, a sum equal to fifty percent (50%) of the full value of the property as of the date of th[e] Agreement."

The parties next exchanged financial affidavits and, in reliance on those affidavits, a joint pretrial statement. The joint pretrial statement noted only one significant dispute, which related to Former Wife's self-employment income.

Nonetheless, at the trial to determine the amounts of child support and alimony (if any) to be awarded to Former Wife, Former Wife disputed Former Husband's income. Specifically, she alleged that Former Husband, an attorney, had received a payment of $16,620.47 in attorney's fees from a personal injury case; this payment had not been disclosed in Former Husband's financial affidavits; and thus, Former Wife was entitled to one-half of the payment as "willfully concealed" marital property. Former Husband responded that this payment was not concealed and had been spent towards a family vacation as well as on renovations of the marital residence. Former Wife did not dispute awareness of the payment and its use as described by Former Husband. However, Former Wife contended she did not know the amount of the payment that Former Husband had retained for himself.

In the final judgment of dissolution, the trial court incorporated the Parental Plan and PMSA. The trial court further ordered the $16,620.47 be divided between the parties, finding it "willfully concealed or undervalued" marital property. In addition, the final judgment made findings as to the parties' "gross monthly income" that were slightly different than the amounts presented in the PMSA and, based on these calculations, the trial court ordered Former Husband to pay child support and durational alimony. Former Husband was also ordered

to "pay for 70% of all non-covered medical costs, cost of school field trips, [and] school supplies, including uniforms." This appeal followed.

## Analysis

A trial court's interpretation of a settlement agreement is subject to *de novo* review. *See Reilly v. Reilly*, 94 So. 3d 693, 699 (Fla. 4th DCA 2012).

> "[W]hen a court incorporates a settlement agreement into a final judgment or approves a settlement agreement by order and retains jurisdiction to enforce its terms, the court has the jurisdiction to enforce the terms of the settlement agreement . . . . [H]owever, the extent of the court's continuing jurisdiction to enforce the terms of the settlement agreement is circumscribed by the terms of that agreement." *Paulucci v. Gen. Dynamics Corp.*, 842 So. 2d 797, 803 (Fla. 2003). Although a trial court may be motivated to do what it considers to be fair and equitable, it retains no jurisdiction to rewrite the terms of a marital settlement agreement.

*Rocha v. Mendonca*, 35 So. 3d 973, 976 (Fla. 3d DCA 2010) (first alteration in original).

> A marital settlement agreement is interpreted like any other contract. "[A]bsent any evidence that the parties intended to endow a special meaning in the terms used in the agreement, the unambiguous language is to be given a realistic interpretation based on the plain, everyday meaning conveyed by the words." Courts are not to rewrite terms that are "clear and unambiguous."

*Feliciano v. Munoz-Feliciano*, 190 So. 3d 232, 234 (Fla. 4th DCA 2016) (alteration in original) (citation omitted) (quoting *Kipp v. Kipp*, 844 So. 2d 691, 693 (Fla. 4th DCA 2003), and *Cole v. Cole*, 95 So. 3d 369, 371 (Fla. 3d DCA 2012)).

On appeal, Former Husband challenges the trial court's: (A) finding that he willfully concealed or undervalued a payment of $16,620.47; (B) finding that his income was different than the income listed on the joint pretrial statement; (C) method of calculating alimony; and (D) finding that he was required to pay seventy percent of the costs of items relating to the parties' minor children.

   A. *The $16,620.47 payment was not "willfully concealed or undervalued marital property," because Former Wife knew the payment existed and had already been depleted, making the order for Former Husband to pay Former Wife half of these funds in error.*

The PMSA provided that if a party "willfully concealed or undervalued" an asset, the party concealing or undervaluing the asset must pay fifty percent of the full value of the asset to the other party. The trial court found that Former Husband had willfully concealed or undervalued a $16,620.47 payment he received in attorney's fees.

At the onset, it should be noted that "[a] stipulation that limits the issues to be tried 'amounts to a binding waiver and elimination of all issues not included.'" *Cent. Square Tarragon LLC v. Great Divide Ins. Co.*, 82 So. 3d 911, 914 (Fla. 4th DCA 2011) (emphasis omitted) (quoting *Broche v. Cohn*, 987 So. 2d 124, 127 (Fla. 4th DCA 2008)).

Here, whether this asset was concealed or undervalued was not an issue to be litigated. The issue was not raised in the pleadings, and the joint pretrial statement does not list it as an issue to be tried. Nor are we convinced that the issue was tried by implied consent, given Former Husband's argument during redirect examination that the trial court could not consider this issue.

Even assuming that this issue was properly raised, no evidence existed to show that the asset was willfully concealed or undervalued. The asset was not concealed, because Former Wife admitted she knew about the payment. Moreover, Former Husband testified without contradiction that the payment was disclosed within the documents delivered prior to signing the PMSA. Nor was the payment undervalued on Former Husband's financial affidavit because the asset did not exist when he filed that document. Former Husband testified, and Former Wife admitted in her own testimony, that the asset had been spent on house renovations and vacations. Accordingly, the trial court erred in finding that Former Husband had willfully concealed or undervalued the $16,620.47 payment.

> *B. The trial court's calculation of the parties' income did not accord with the joint pretrial statement.*

"Pretrial stipulations prescribing the issues on which a case is to be tried are binding upon the parties and the court, and should be strictly enforced." *Cent. Square Tarragon*, 82 So. 3d at 914 (quoting *Broche*, 987 So. 2d at 127). "When the parties agree that a case is to be tried upon stipulated facts, the stipulation is binding not only upon the parties but also upon the trial and reviewing courts. In addition, no other or different facts will be presumed to exist." *Palm Beach Cmty. Coll. v. State, Dep't of Admin., Div. of Ret.*, 579 So. 2d 300, 302 (Fla. 4th DCA 1991). However, some rare cases involve implicit assumptions within stipulations regarding whether an issue is disputed or not. *See Broche*, 987 So. 2d at 127; *Kahle v. Prewitt*, 673 So. 2d 121, 122 (Fla. 4th DCA 1996).

4

Here, the joint pretrial statement contained three pertinent sections. The first pertinent section, labeled "The Parties," included income figures for both parties. Former Husband's income was listed as "$9,167" and "$1,227 (average bonuses)." Former Wife's income from Broward College was listed as "$4,416 (Broward College)." The second pertinent section was titled "Stipulated Facts," and this section made no mention of the parties' income. The third pertinent section was titled "Issues for the Court to Decide." This section also did not list the parties' income as an issue for the court to decide, with an exception for Former Wife's self-employment income.

In reviewing the stipulation of facts, we find that Former Husband's income and average bonus and Former Wife's Broward College employment income were stipulated. Significantly, Former Wife's self-employment income was explicitly disputed, yet the stipulation did not indicate that either Former Husband's income and average bonus or Former Wife's Broward College income was challenged. By disputing only one of the parties' incomes and not the other, this is that rare instance where the contesting of one fact impliedly shows another fact is undisputed. In other words, by explicitly contesting Former Wife's self-employment income, but not disputing either Former Wife's Broward College income or Former Husband's income in the same section, Former Husband's income and average bonus as well as Former Wife's Broward College income became stipulated facts.[1]

Therefore, the trial court was bound by Former Husband's stipulated income of $9,167 and $1,227 in monthly income, with the latter amount representing Former Husband's average bonus. Thus, the trial court erred in determining Former Husband's income was "$11,071.67 ($9,930 from monthly employer-paid income, and $13,700 in bonuses paid annually)." By the same token, the trial court erred in finding that Former Wife's Broward College income was "$4,951 ($4,784.00 in employer-paid income)," because the pretrial stipulation only stated that Former Wife's "monthly income from self[-]employment" was disputed. Finally, because Former Wife's self-employment income was disputed, the trial court did not err in finding that Former Wife's self-employment income was $167.00.

The trial court on remand shall use Former Husband's stipulated employer-paid income and average bonus and Former Wife's stipulated Broward College income in making its calculations for alimony and child support.

### C. The trial court erred in determining the parties' financial circumstances regarding alimony, because it used the wrong calculation method.

---

[1] We also note that we are not bound by the parties' characterization of their own filings. *Kenney v. Goff*, 259 So. 3d 140, 146 (Fla. 4th DCA 2018). Thus, the fact that one section was labeled as "Stipulated Facts" does not preclude us from finding that the parties included stipulated facts in another section.

5

A trial court's determination of alimony is facially erroneous when it "fail[s] to look to the parties' *net* incomes in assessing need and ability to pay." *Badgley v. Sanchez*, 165 So. 3d 742, 744–45 (Fla. 4th DCA 2015).

Here, in the final judgment's award of durational alimony to Former Wife, the trial court abused its discretion in calculating the parties' financial circumstances because it improperly used the parties' gross income rather than their net income. *Marini v. Kellet*, 279 So. 3d 248, 253 (Fla. 5th DCA 2019). The proper calculation to determine a party's financial circumstances is to subtract the party's monthly expenses from their *net monthly income*, per the formula found in Florida Family Law Rules of Procedure Forms 12.902(c) and (e).

If, on remand, the trial court arrives at a different amount of alimony to be received by Former Wife, it will need to recalculate the child support amount. "The child support computation provisions state that in computing net income, alimony received is counted as income to the payee spouse and alimony paid is deducted from the payor's spouse's income . . . ." *Kranz v. Kranz*, 737 So. 2d 1198, 1200 (Fla. 5th DCA 1999).

Accordingly, we reverse and remand, instructing the trial court "to make the necessary findings [regarding the parties' net monthly income] and to recalculate the [parties'] child support [and alimony] obligation[s] if necessary." *Marquez v. Lopez*, 187 So. 3d 335, 338 (Fla. 4th DCA 2016).

### D. The trial court erred in ordering Former Husband to pay seventy percent of the costs of several items related to the parties' minor children.

Prior to trial, the parties mutually agreed on a Parental Plan which provided that "[t]he parties shall share the costs of uncovered medical expenses . . . costs of school field trips . . . [and] costs of school supplies, including uniforms, pro rata." Despite the Parental Plan being approved by the trial court and later incorporated into the final judgment, the final judgment ordered that Former Husband shall pay for seventy percent of these expenses. As Former Wife concedes on appeal, this was inconsistent with the Parental Plan. On remand, the trial court shall modify this portion of the final judgment to accord with the terms of the agreed-upon Parental Plan.

### Conclusion

As noted above, we agree with Former Husband's above-noted challenges to the trial court's findings and calculations. Therefore, we reverse and remand for the trial court to make the adjustments so noted in an amended final judgment.

*Reversed and remanded with instructions.*

CIKLIN, J., concurs.
WARNER, J., concurs specially with opinion.

WARNER, J., concurring specially.

I concur in the majority opinion, including the direction upon remand that the court recalculate the alimony and child support using the income figures from the joint pretrial stipulation. However, unlike the majority, I conclude that the trial court used the proper procedure to determine child support and alimony. The child support guidelines worksheet shows that it included the $1000 in alimony awarded, and that the calculations were based upon the parties' net income, not gross income. Therefore, the court correctly determined the amount of alimony prior to determining the child support.

Also, the record does not indicate that the court used gross income to calculate alimony, rather than net income. Net income is not defined in the statute for the purposes of calculating alimony, as it is for calculating child support. *Compare* § 61.08, Fla. Stat. (2021), *with* § 61.30(3), Fla. Stat. (2021). The court has discretion to determine what expenses are reasonable for either party in assessing need and ability to pay. *See, e.g., Soria v. Soria*, 237 So. 3d 454, 461 (Fla. 2d DCA 2018). Here, the court deducted the former husband's expenses from his income and determined that with his surplus he could easily pay the $1000 per month in alimony. Thus, I find that the court's procedure for determining alimony and child support was proper. However, I agree with the majority that both alimony and child support have to be recalculated on remand using the stipulated income figures.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***