# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 10, 2016 Session

## IN RE: ESTATE OF BRUCE CHAPMAN BOWER

**Appeal from the Probate Court for Sevier County**
**No. 12024918     Jeffrey D. Rader, Judge**

---

**No. E2015-01510-COA-R3-CV-FILED-JUNE 8, 2016**

---

This appeal arises over a dispute regarding the terms of a trust. Bruce Chapman Bower ("Decedent") died having executed a trust ("the Trust"), the primary asset of which was a lake house. Decedent's son, Christopher R. Bower ("Successor Trustee"), served as Successor Trustee. Decedent's widow, Denise Bower ("Widow"), objected to the appointment of Successor Trustee, and the parties engaged in litigation over various terms of the Trust. The Probate Court for Sevier County ("Trial Court") found that, under the Trust, Widow was entitled to exclusive use of the lake house as well as payments of $2,000 per month. Successor Trustee appealed to this Court. We reverse the judgment of the Trial Court in its interpretation of the terms of the Trust. We also modify the Trial Court's award of attorney's fees to Widow. The judgment of the Trial Court is modified, in part, and reversed, in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court is Modified, in part, and Reversed, in part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.

Richard T. Scrugham, Jr., Knoxville, Tennessee, and, Steven C. Compton, Nolensville, Tennessee, for the appellant, Christopher R. Bower, as Successor Trustee of the Bruce Chapman Bower and Lissa Leland Bower Revocable Living Trust Agreement.

R. Alexander Johnson, Sevierville, Tennessee, for the appellee, Denise Bower.

## OPINION

### Background

This appeal concerns a contentious dispute over the terms of the Trust. In May 1995, Decedent and his then wife, Lissa Leland Bower, executed the Bruce Chapman Bower and Lissa Leland Bower Revocable Living Trust Agreement. Lissa Leland Bower died in 1999. Decedent married Widow in 2002. Shortly after Decedent married Widow, the two executed a postnuptial agreement wherein the parties waived rights to each other's estate. In May 2010, Decedent executed the Third Amendment To, and Restatement of, the Bruce Chapman Bower and Lissa Leland Bower Revocable Living Trust Agreement, the Trust. In July 2011, Decedent died. Decedent was survived by Widow and his three adult children, Christopher R. Bower—the Successor Trustee, Todd L. Bower, and Kimberly Ann Tooker.

In February 2012, Successor Trustee filed a petition to submit Decedent's last will and testament to probate. Widow objected to the appointment of Christopher R. Bower as Successor Trustee. A protracted legal battle ensued, including proceedings in Florida before the matter was returned to Tennessee. Crucially, a dispute arose over the provisions of the Trust as to whether Widow was entitled to payments of $2,000 per month until she died or remarried or until she died, remarried, or became eligible for Medicare. This was significant because Widow already had attained Medicare eligibility at the time of the execution of the Trust. Successor Trustee took the position that, under the terms of the Trust, Widow was not entitled to these payments because she was of Medicare eligibility age, and Successor Trustee did not make any such payments to Widow. Another issue was whether Widow was entitled to primary or exclusive use of the lake house, the principal asset of the Trust.

Given the centrality of the Trust provisions to this appeal, we quote a large section of the Trust agreement as follows:

TRUSTEE SUCCESSION

Upon the death, resignation, or incompetence of the original Trustee, BRUCE CHAPMAN BOWER, Grantor's son, CHRISTOPHER R. BOWER, shall serve as Successor Trustee. If CHRISTOPHER R. BOWER is unable or unwilling to serve as Successor Trustee, then and in that event, Grantor's son, TODD L. BOWER, shall serve as Successor Trustee. The successor Trustee shall be paid $100 per month from the Trust assets for services rendered.

DISPOSITION OF INCOME AND PRINCIPAL

A. During the lifetime of the Grantor, the Trustee shall pay to or for the benefit of the Grantor all of the net income of the trust, in at least quarter-annual payments, and so much of the principal of the trust as the Grantor may from time to time request and direct by written instrument delivered to Trustee.

B. Upon the death of the Grantor, the Successor Trustee shall administer the trust as follows:

1. The Successor Trustee shall pay the Grantor's just debts, expenses of last illness, and burial expense, to the extent that these items shall not be paid or the responsibility for their payment be assured by some other person or estate, except that the Successor Trustee, in his discretion, shall not be required to pay and discharge, both as to principal and interest, any valid lien, mortgage, or charge against any real property, including buildings and improvements, but may elect to treat such as a continuing debt.

2. The Grantor has executed a *Postnuptial Agreement* dated February 12, 2003, with his spouse, DENISE BOWER ("Denise"). The Successor Trustee is hereby directed to comply with all of the provisions of that *Postnuptial Agreement*. Grantor's obligations under that Agreement include:

(a) Furnishing Grantor's surviving spouse, Denise, all of the benefits of Allianz Life Insurance Company of North American Annuity Contract . . . (Agent's telephone number: . . . , Knoxville, Tennessee 37918), owned by the Trust. It is suggested that Denise continue this contract as an investment, using benefits only, as needed.

(b) Allowing Denise, along with Grantor's descendants, the use of the residence located at . . . , Sevierville, Tennessee 37862. Denise's use of the property shall continue unto such time as she dies, remarries, or abandons the use of the property. Denise shall have the primary use of the property. My Trustees are directed to pay from the trust assets all of the real estate taxes, insurance, and maintenance expenses of this residence, so long as the residence is occupied by Denise or my descendants under the provisions of the Trust. All utilities shall be paid by the current occupant or occupants of the property, or if not occupied, then paid by the Trust.

(c) The Trust shall pay to Denise the sum of Two Thousand Dollars ($2,000.00) per month from the date of the death of the Grantor. In addition, Denise shall also be given sufficient sums to pay her medical insurance premiums, which are currently automatically deducted from Tennessee State Bank account. The payments called for under this

subparagraph shall be in addition to any social security or other similar benefits which Denise may receive as Grantor's surviving spouse, or otherwise, and shall continue until such time as Denise dies, remarries, or is qualified to receive Medicare Benefits.

(d)  Denise shall be entitled to the ownership of at least one motor vehicle, which may be provided by being the joint owner of a motor vehicle with Grantor, or being the owner of a motor vehicle at Grantor's death, title to which is in Denise's name alone.  The Toyota pickup truck shall remain with the residence at . . . .  All other vehicles, including RVs or antique vehicles, owned by the Grantor shall remain in the Trust, with disposition being the responsibility of the Trustee.

(e)  Should Denise survive Grantor, Denise shall be the exclusive owner of the common furnishings purchased during Grantor's marriage to Denise.

(f) In addition to the foregoing provisions under this paragraph B2 relating to DISPOSITION OF INCOME AND PRINCIPAL following the Grantor's death, and in compliance with the Postnuptial Agreement entered into between the Grantor and Denise, the assets of the Trust, including but not limited to securities, real estate, cash on hand, and ownership in any business ventures which may be owned by the Trust, shall remain in the Trust during the lifetime of Denise, or until she remarries, whichever first occurs. The income from the Trust shall be distributed to Denise during her lifetime, or until her remarriage, whichever first occurs.

3. At the death or remarriage of Denise, and after all of the above and foregoing obligations have been met, the Successor Trustee shall distribute the remainder of the Trust, in equal shares, among Grantor's children, TODD L. BOWER, CHRISTOPHER R. BOWER, and KIMBERLY ANN TOOKER, provided, however, that no distribution shall be made to any child until any outstanding debt by that child due the Grantor or the Trust is satisfied.

\*\*\*

VALIDITY-AND-CONSTRUCTION

The validity of the Trust created under this Agreement and the validity, construction and interpretation of the provisions herein contained shall be determined in accordance with the laws of the State of Florida.

In November 2014, the Trial Court entered an order for declaratory judgment in which it found that Widow was entitled to $2,000 per month payments under the Trust until she died or remarried, and that, despite the plain and unambiguous

language of the Trust, her Medicare eligibility did not affect her right to receive the $2,000 per month payments. The Trial Court also found that Widow was entitled to exclusive use of the lake house, rather than simply primary or first use. The Trial Court reserved other matters such as attorney's fees.

In May 2015, the Trial Court heard evidence on all remaining matters in the case. Testimony was elicited revealing the tensions between Widow and Decedent's family members. There was contradictory testimony as to whether Widow's continued use of the lake house was disturbed by members of Decedent's family. It also emerged that Widow apparently previously may have misstated her age, purporting to be five years younger than she actually was based upon an error on her marriage certificate. Widow testified that she was born in 1945 rather than in 1950 as stated on the marriage certificate. What impact this had on Decedent's intent in drafting the Trust was disputed below and now on appeal. Another issue raised, this one relevant to attorney's fees as part of a breach of fiduciary duty theory advanced by Widow, was Successor Trustee's testimony concerning a debt he settled which was owed to the Trust by his brother Todd Bower. Successor Trustee testified that that the original debt was $181,000 and was made to Todd Bower's business by Decedent. The debt had been paid down to approximately $85,000, but the business faced bankruptcy nevertheless. Successor Trustee accepted 50% of the debt, around $42,000. Successor Trustee testified that he believed this was a resolution that made the best of a bad situation.

In July 2015, the Trial Court entered its final judgment, finding in relevant part as follows:

1. There is a significant lack of trust between Denise E. Bower and the Successor Trustee which has resulted in miscommunications and misunderstandings. However, based upon Christopher R. Bower's testimony and the record before the Court, the Court finds that the taxes and insurance for the Residence have been paid either by the Successor Trustee or by Brian Mansfield, the administrator ad litem for the estate of the decedent. Further, there is not sufficient evidence before the Court to verify the claims against Christopher R. Bower that he took malicious actions in changing locks, removing security barriers, or invading the privacy of Denise E. Bower. Further, the failure of the Successor Trustee to make the $2,000.00 payments to Denise E. Bower during the pending litigation does not constitute a breach of his fiduciary duty.

2. However, it was uncontroverted that Christopher R. Bower settled a debt owed to the trust by Todd L. Bower in such a manner that no proceeds of the debt repayment could ever benefit Denise E. Bower, the

primary beneficiary of the trust. In fact, the debt settlement directly benefited Christopher R. Bower, who is also a remainder beneficiary; to the detriment of Denise E. Bower. This debt settlement is partially to blame for the reduced liquid assets available to the trust to pay Denise E. Bower the $2,000.00 per month to which she is entitled under the terms of the trust. The Successor Trustee breached his fiduciary duty as a result of this debt settlement.

3. It is also uncontroverted that Christopher R. Bower instituted an action in the Florida courts on behalf of the trust which Denise E. Bower opposed. In that process both parties incurred significant attorney fees, in large part due to the appeal filed by Christopher R. Bower after the action was initially dismissed because the Florida trial court found it was not the proper venue, rather, the Florida court found that Tennessee was the proper venue with jurisdiction of the matter. It is uncontroverted that Denise E. Bower incurred $20,360.00 in attorney fees defending against the Florida action to insure the trust-related litigation was brought in the proper Court. Likewise, it is uncontroverted that Denise E. Bower incurred $24,610.79 in attorney fees in litigation before this Court.

4. The Successor Trustee's contention that the primary purpose of the Trust is to provide a home for Bruce and Lissa Bower's family to enjoy is not supported by the text of the Trust. When read using the ordinary and plain meaning of the language of the Trust and when considered in light of the entire Trust document the Trust provides that the Successor Trustee is granted the power to sell the Residence under the terms of the Trust, it is also uncontroverted that Denise E. Bower is to have "primary use" of the Residence until she dies, remarries or abandons the Residence, and when the Trust terminates upon the death or remarriage of Denise E. Bower the Residence is to be transferred to Christopher R. Bower, Todd L. Bower and Karen Ann Tooker in their individual capacities outside of trust without any restraint on its alienation.

5. The Court finds that based upon the ordinary and plain meaning of the language of the Trust, when considered in light of the entire Trust document, the primary purpose of the Trust is to provide for Denise E. Bower until she dies or remarries. Given that the Residence is for Denise E. Bower's "primary use" until she dies, remarries, or abandons, and that the Trust provides monthly payments to Denise E. Bower until she dies or remarries, and all trust income is also payable to Denise E. Bower until she dies or remarries, and there is no provision for any distribution or rights for

-6-

any other person until Denise E. Bower dies or remarries, it is clear that her care and well-being was the settlor's intent and the primary purpose of the Trust.

**IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED**, that the Successor Trustee did breach his fiduciary duty as a result of the settlement of a debt owed to the Trust which benefited himself while depriving the trust of available assets to pay Denise E. Bower the $2,000.00 per month she is due under the terms of the Trust. However, said breach does not rise to the level to warrant his removal as the Successor Trustee. Therefore, Denise E. Bower's petition to remove Christopher R. Bower as Successor Trustee is hereby denied.

It is further **Ordered, Adjudged, and Decreed**, that the primary purpose of the Trust is to provide for the care and well-being of Denise E. Bower, not to provide a home for Bruce and Lissa Bower's family to enjoy, and the Successor Trustee's petition to amend or alter the Trust is therefore denied. Likewise, Denise E. Bower's request to modify the trust is also denied.

It is further **Ordered, Adjudged, and Decreed**, that Denise E. Bower's attorney's fees resulted in a benefit to the Trust by virtue of causing this action to be brought in the proper venue and causing the Trust to be interpreted so that the settlor's wishes can be carried out. Denise E. Bower also brought this action as a result of a breach of fiduciary duty and under Florida Statute §736.1004 this Court is required to award Denise E. Bower her attorney fees in such actions. Further, under Florida Statute §736.1005 this Court has discretion to award said attorney fees. Therefore, Denise E. Bower's motions for attorney fees are granted.

It is further **Ordered, Adjudged, and Decreed**, that the Court's Order staying the Order for Declaratory Judgment, entered on November 17, 2014, in regards to any monies ordered to be paid by the Successor Trustee Christopher R. Bower to Denise E. Bower is lifted and said monies shall be paid immediately along with the monies due to Denise E. Bower as reimbursement for her attorney fees.

This is a final order and resolves all outstanding issues and claims before this Court pursuant to Rule 54 of the Tennessee Rules of Civil Procedure. The costs of this cause shall be taxed against the Trust for which execution may issue if necessary.

Successor Trustee timely appealed to this Court.

**Discussion**

Although not stated exactly as such, Successor Trustee raises the following issues on appeal: 1) whether the Trial Court erred in ruling that Successor Trustee was required to pay Widow $2,000 per month after she had reached the age of qualifying for Medicare benefits; 2) whether the Trial Court erred in ruling that, despite the Trust granting Widow "primary" use of the lake house, Widow was entitled to exclusive use of the lake house; 3) whether the Trial Court erred in declining to modify the terms of the Trust; and, 4) whether the Trial Court erred in granting Widow her attorney's fees.

The Trust by its own terms required it to be construed under the laws of Florida. Florida law provides as follows:

> The trial court's interpretation of the trust documents is reviewed *de novo*. *See Vetrick v. Keating*, 877 So.2d 54, 56 (Fla. 4th DCA 2004) (reviewing summary judgment interpreting trust document, noting review was *de novo* ); *see also Wells Fargo Bank, N.A. v. Morcom*, 125 So.3d 320, 321 (Fla. 5th DCA 2013) ("The standard of review governing the ruling of a trial court on a motion for summary judgment posing a pure question of law is *de novo*.").
>
> Generally, "[t]he polestar of trust or will interpretation is the settlor's intent," which should be "ascertained from the four corners of the document through consideration of 'all the provisions of the will [or trust] taken together....' " *Bryan v. Dethlefs*, 959 So.2d 314, 317 (Fla. 3d DCA 2007) (quoting *Sorrels v. McNally*, 89 Fla. 457, 105 So. 106, 109 (1925)). Where the terms of a trust agreement are unambiguous, the court should not refer to parol evidence to interpret its meaning. *In re Estate of Barry*, 689 So.2d 1186, 1187-88 (Fla. 4th DCA 1997). "The fact that both sides ascribe different meanings to the language does not mean the language is ambiguous so as to allow the admission of extrinsic evidence." *Bryan*, 959 So.2d at 317 n. 2 (quoting *Kipp v. Kipp*, 844 So.2d 691, 693 (Fla. 4th DCA 2003)).

*Minassian v. Rachins*, 152 So.3d 719, 725-26 (Fla. Dist. Ct. App. 2014).

We first address whether the Trial Court erred in ruling that Successor Trustee was required to pay Widow $2,000 per month after she had reached the age of qualifying for Medicare benefits. Section B(2)(c) of the Trust states as follows:

> The Trust shall pay to Denise the sum of Two Thousand Dollars ($2,000.00) per month from the date of the death of the Grantor. In addition, Denise shall also be given sufficient sums to pay her medical insurance premiums, which are currently automatically deducted from Tennessee State Bank account. The payments called for under this subparagraph shall be in addition to any social security or other similar benefits which Denise may receive as Grantor's surviving spouse, or otherwise, and shall continue until such time as Denise dies, remarries, or is qualified to receive Medicare Benefits.

Successor Trustee argues that the plain and unambiguous language of the Trust requires that payments called for under Subsection B(2)(c) terminate upon Widow's reaching Medicare eligibility age. Widow was, in fact, of Medicare eligibility age when the Trust was executed. Widow argues that interpreting Subsection B(2)(c) as Successor Trustee suggests would undermine the whole purpose of the Trust. According to Widow, Decedent's primary intent in executing the Trust was to provide for Widow upon his death.

From our reading of the above quoted unambiguous Subsection B(2)(c), it appears the most natural and ordinary meaning to be ascribed is that *all* of the "payments called for under this subparagraph" are subject to *all* the conditions listed for termination of payments. Widow asserts that the $2,000 per month payments are required to continue until she dies or remarries because the part regarding payments terminating upon her reaching Medicare eligibility somehow applies only to the health insurance payments. This interpretation would inure to the benefit of Widow, but we cannot ignore the plain and unambiguous language of the Subsection as written. There are no qualifying terms before or after "payments called for under this subparagraph." Our polestar, as required by Florida law, is to determine the settlor's intent. When presented with unambiguous language in a trust, we may not substitute our own judgment. The plain, unambiguous, and ordinary meaning of the words therein will control. We find and hold that the $2,000 monthly payments, as did all the other payments under Section B(2)(c), terminated upon Widow reaching Medicare eligibility.

Our interpretation of Subsection B(2)(c) may seem harsh with respect to Widow, but the language is plain and unambiguous. We cannot probe the late Decedent's mind to determine his intent other than by the plain and unambiguous language he used. Why did he include a provision in the Trust that effectively was a

nullity upon execution? Did Decedent know or not know Widow's true age and take it into account while establishing the Trust? We will not guess. There could be any number of reasons why Decedent chose to include Subsection B(2)(c) as written. Attempting to effectuate judicially a decedent's "real" intent, in the face of unambiguous trust language to the contrary, is a course fraught with peril and one we decline to embark upon. We reverse the Trial Court as to this issue.

We next address whether the Trial Court erred in ruling that, despite the Trust granting Widow "primary" use of the lake house, Widow was entitled to exclusive use of the lake house. Section B(2)(b) of the Trust states as follows:

> Allowing Denise, along with Grantor's descendants, the use of the residence located at . . . , Sevierville, Tennessee 37862. Denise's use of the property shall continue unto such time as she dies, remarries, or abandons the use of the property. Denise shall have the primary use of the property. My Trustees are directed to pay from the trust assets all of the real estate taxes, insurance, and maintenance expenses of this residence, so long as the residence is occupied by Denise or my descendants under the provisions of the Trust. All utilities shall be paid by the current occupant or occupants of the property, or if not occupied, then paid by the Trust.

Successor Trustee argues that the Trial Court erred in interpreting "primary" use to mean "exclusive" use. Widow, in her brief on appeal, cites Merriam-Webster Dictionary to define primary to mean "of first rank, importance, or value." We agree with Successor Trustee that the terms "primary" and "exclusive" are not synonymous. Rather, primary means, as Widow herself acknowledges, first in importance. Exclusive on the other hand means sole or complete. Subsection B(2)(b) provides that Widow, "along with Grantor's descendants," would enjoy use of the lake house, with Widow having "primary use." The Trial Court's interpretation of this unambiguous language effectively removes "along with Grantor's descendants" from this section of the Trust. This was error.

In this Court's judgment, the most straightforward interpretation of this unambiguous language is that Widow and Decedent's descendants are allowed concurrent use of the lake house, with Widow having first rank, or choice, in exercising this use. In other words, when Widow is using—that is, staying in or residing in person at—the lake house, Decedent's descendants may not use the lake house. However, when Widow is not making use of the lake house, Decedent's descendants are free to use the lake house. We reverse the judgment of the Trial Court on this issue.

-10-

We next address whether the Trial Court erred in declining to modify the terms of the Trust. Florida law does provide for modification of trust terms in some circumstances. Successor Trustee frames this as an alternative argument in the event that the Trial Court's interpretation of the Trust's language is upheld. Given our reversal of the Trial Court in its interpretation of the disputed Trust provisions, we find it unnecessary to address whether the Trial Court erred in declining to modify the terms of the Trust.

The final issue we address is whether the Trial Court erred in granting Widow her attorney's fees. The Trial Court relied on two sections of the Florida Statutes in its decision to award attorney's fees to Widow. First, Section 736.1004 of the Florida Statutes provides that in all actions for breach of fiduciary duty, "the court shall award taxable costs as in chancery actions, including attorney fees . . . ." The Trial Court found that Successor Trustee had breached his fiduciary duty in settling his brother's debt. However, the Trial Court's rationale for its finding was intertwined with its interpretation of the Trust, which we hold to be in error. The Trial Court found "that the Successor Trustee did breach his fiduciary duty as a result of the settlement of a debt owed to the Trust which benefited himself while depriving the trust of available assets to pay Denise E. Bower the $2,000.00 per month she is due under the terms of the Trust." We have determined that there was no such requirement under the Trust for Successor Trustee to pay Widow $2,000 per month because she already had attained Medicare eligibility age. Given this, Successor Trustee could not deprive the Trust of available assets toward a duty which did not, in this Court's judgment, exist. We hold that the Trial Court erred in awarding attorney's fees to Widow on this basis.

Second, Section 736.1005 provides "Any attorney who has rendered services to a trust may be awarded reasonable compensation from the trust." Widow was successful in her legal effort to move the case from Florida to the proper venue in Tennessee. The Trial Court found that Widow incurred attorney's fees defending against the action in Florida.[1] By ensuring that the case was brought in the proper venue, Widow saved the Trust resources that otherwise would have been expended litigating the matter in the wrong venue. We find that Widow's successful effort in bringing the Trust litigation to the proper venue benefitted the Trust. We, therefore, find that Widow is entitled to those attorney's fees of $19,950.46 she incurred in the Florida litigation, and those attorney's fees alone. The Trial Court's award of attorney's fees to Widow is so modified.

---

[1] The Trial Court found that Widow incurred $20,360 in attorney's fees in defending against the action in Florida. However, it is clear from Widow's filings that she requested $19,950.46 in attorney's fees for defending against the action in Florida. The Trial Court used the wrong figure for the Florida attorney's fees. We instead use the correct figure of $19,950.46.

In summary, the Trial Court erred in its interpretation of the relevant Trust provisions. Since Widow has been of Medicare eligibility age since the execution of the Trust, she is not entitled to the $2,000 per month payments. Widow also is not entitled to exclusive use of the lake house, but rather she is entitled to primary use until she dies, remarries, or abandons the use of the property. Decedent's descendants may use the lake house only if and when Widow is not staying in or residing in person there. Finally, we modify the award of attorney's fees to Widow such that Widow is entitled only to those attorney's fees of $19,950.46 she incurred defending the Florida action and successfully moving the case back to Tennessee. The judgment of the Trial Court is modified, in part, and reversed, in part.

## Conclusion

The judgment of the Trial Court is modified, in part, and reversed, in part, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed equally one-half against the Appellant, Christopher R. Bower, as Successor Trustee of the Bruce Chapman Bower and Lissa Leland Bower Revocable Living Trust Agreement, and his surety, if any, and, one-half against the Appellee, Denise Bower.

_____
D. MICHAEL SWINEY, CHIEF JUDGE