975 So.2d 603 (2008)
Deborah CHIPMAN, Appellant,
v.
Alvin Eugene CHIPMAN, Appellee.
No. 4D06-3935.
District Court of Appeal of Florida, Fourth District.
March 5, 2008.
*604 Inger M. Garcia and Barry S. Mittelberg of Mittelberg & Nicosia, P.A., Fort Lauderdale, for appellant.
Kevin L. McNamara of McNamara & McNamara, P.A., North Palm Beach, for appellee.
HAZOURI, J.
Appellant, Deborah Chipman ("wife"), appeals from the final judgment entered in her dissolution of marriage action against appellee, Alvin Eugene Chipman ("husband"). The husband cross-appeals. We reverse.
The parties were married on January 26, 1985. There were two children born of the marriage. In November 2004, the wife took early retirement from her employment as a police officer with the Miami-Dade Police Department. At the time of her retirement, she had $666,422.61 in her pension plan.
In June 2005, after the parties' relationship began to deteriorate, the wife asked the husband to sign a postnuptial agreement ("the agreement") drafted by her attorney, which provided in pertinent part:
I. MARITAL RESIDENCE:

The parties own real property, known as the marital residence and located at 781 Gallop Drive, Loxahatchee, Palm Beach County, Florida as tenants by the entireties. The parties further acknowledge that said residence is encumbered by three (3) mortgages. The 1st mortgage has an [sic] balance of approximately *605 $293,000 and is held by Countrywide Home Loans. The 2nd mortgage has an approximate balance of $150,000 and is held by Suntrust Bank. The 3rd mortgage has an approximate balance of $128,000 and is held by Guaranty Bank. The parties acknowledge that the 2nd mortgage held by Suntrust Bank is a line of credit.
The parties agree and intend to pay off the 1st mortgage held by Countrywide Home Loan in full, and desire and intend to utilize monies from the Wife's retirement and pension plan to accomplish such payoff. The parties understand and acknowledge that the Wife shall incur certain ramifications from the early withdrawal of such funds for this purpose to her detriment. Therefore, the parties intend, desire and agree that there shall be established a special equity to the benefit of the Wife in the full amount of all funds removed by the Wife from her pension and retirement plan and contributed to the payment of the 1st mortgage on the marital residence, including any prepayment penalties, taxes or other payments incurred by the Wife as a result of such early withdrawal from her retirement and/or pension plans to effect such payment of the mortgage. Any satisfaction of mortgage issued in the parties [sic] joint names shall not serve as evidence of any entitlement to the value, equity, interest, rights or title to said marital residence in contradiction of any provisions contained in this Agreement.
In the event the property is sold in the future or otherwise distributed by any Court of competent jurisdiction, the parties specifically intend and agree that the Wife shall be entitled to a Special Equity as described herein and shall 1st be paid the amount of such equity prior to the distribution of any other proceeds or funds.
The Husband hereby waives and forever relinquishes any right, title or interest in the Wife's retirement or pension plans which he would otherwise be entitled as a result of the parties [sic] marriage, regardless of any action filed for dissolution of marriage, spousal support or any other circumstance which may arise in the future.
(emphasis in original). The husband signed the agreement, but claimed later at trial that the wife misrepresented its purpose and consequences. The husband testified that he agreed to a waiver of his right to claim against the wife's pension funds only if the wife paid the mortgage to zero as promised, which she did not do. Rather, after the parties signed the agreement, the wife contacted Countrywide to ask for financial assistance. Countrywide advised the wife that if the parties paid Countrywide $216,000, it would refinance the mortgage and eliminate the parties' other mortgages and debts by incorporating them into the new mortgage. Both parties signed the refinance documents, and the refinance was completed. The $216,000 used for the refinance came from the wife's pension funds.
In November 2005, the wife filed a petition for dissolution of marriage. The husband answered and counter-petitioned. By the time of trial, the wife had allegedly liquidated nearly the entire $666,422.61, approximately $200,000 of which was unaccounted for at trial. The trial court entered a final judgment of dissolution of marriage. The wife was designated the primary residential parent of the minor daughter. The husband was designated the secondary residential parent, and the parties were awarded shared parental responsibility. With respect to the agreement, the trial court found:

*606 8. The parties entered into a post nuptial agreement which purported to give the Wife a special equity in the marital house and waive all of the Husband's interest in the Wife's retirement funds. Although the Husband acknowledges executing the agreement, he disputes the validity of the agreement. The document is undated and neither party provided definitive testimony as to the date of execution. The Husband testified that the document was not notarized at the time he signed it and the notary attestation was added at a later time. He further asserted that he did not have full disclosure and there was a lack of consideration.
9. To challenge a post nuptial agreement, the Supreme Court in Casto v. Casto, 508 So.2d 330 (Fla.1987) held that the challenging party must establish that the agreement was reached under fraud, deceit, duress, coercion, misrepresentation or overreaching. Additionally, the challenging spouse must establish that the agreement makes an unfair or unreasonable provision for said spouse, given the circumstances of the parties. The Court considered the law in this jurisdiction and the evidence presented and concludes that the Husband has failed to submit evidence sufficient to meet his burden of establishing that the agreement is invalid.
10. The agreement specifically provided that the parties agree and intend to "pay off the first mortgage held by Countrywide Home Loan in full, and desire and intend to utilize monies from the Wife's retirement and pension plan to accomplish such payoff." The undisputed evidence at trial was that the parties actually refinanced all of their debt, consolidating the same into a new mortgage, which included not only the previous mortgage but equity lines, and other marital debts. Hence, the condition set forth in the agreement was not satisfied. Therefore, the Court finds that the agreement is not binding on the Husband.
11. Additionally, the agreement provided that the Husband would "waive and forever relinquish any right, title or interest in the Wife's retirement or pension plans which he would otherwise be entitled as a result of the parties marriage. . . ." As the Wife had liquidated all of her retirement accounts prior to the execution of the agreement, there were no such accounts in existence at the time of the execution for the Husband to waive and relinquish. Hence, this condition was also not met. Therefore, the Wife's request for special equity is denied.
The trial court awarded exclusive use and possession of the marital home to the husband until the home was sold. The parties stipulated that the husband was entitled to a special equity in the amount of $25,000 for the real property on which the marital home is situated. All other remaining assets and debts were considered marital and distributed accordingly.
The trial court granted the wife's petition for partition of the real property. The trial court also determined that the wife voluntarily terminated her employment with the Miami-Dade Police Department, remained unemployed, and that there was no evidence of any physical or mental incapacity. When calculating the joint monthly child support obligation, the trial court imputed to the wife her most recent net monthly income of $5,130.00 per month. The trial court determined that the husband's retirement funds from his employment with United Parcel Service should be divided equally between the parties. The trial court denied the wife's request for alimony. Finally, the trial court stated:

*607 In the absence of any evidence to establish the premarital or non marital nature of some or all of the retirement funds liquidated by the Wife during the course of the marriage and prior to the date of filing the Petition for Dissolution of Marriage, the Court concludes that the retirement funds were marital assets. Accordingly, the tax liability incurred by early withdrawal is a marital debt to be shared equally by the parties.
The wife's first argument on appeal is that the trial court erred in finding the agreement not binding on the husband because a condition precedent was not satisfied. We agree.
A postnuptial agreement is subject to interpretation like any other contract. See, e.g., Bakos v. Bakos, 950 So.2d 1257, 1259-60 (Fla. 2d DCA 2007). The trial court's interpretation of a contract is a matter of law subject to a de novo standard of review. Gossett & Gossett, P.A. v. Mervolion, 941 So.2d 1207, 1210 (Fla. 4th DCA 2006). In In re Estate of Boyar, 592 So.2d 341 (Fla. 4th DCA 1992), this court explained:
As a general rule, conditions precedent are not favored, and courts will not construe provisions to be such, unless required to do so by plain, unambiguous language or by necessary implication. 17A Am.Jur.2d Contracts § 471 (1991). Some of the rules of construction associated with determining whether a doubtful provision is a condition precedent are set forth in Hohenberg Bros. Co. v. George E. Gibbons & Co., 537 S.W.2d 1 (Tex.1976), wherein the court said:
Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty. While no particular words are necessary for the existence of a condition, such terms as "if", "provided that", "on condition that", or some other phrase that conditions performance, usually connote an intent for a condition rather than a promise. In the absence of such a limiting clause, whether a certain contractual provision is a condition, rather than a promise, must be gathered from the contract as a whole and from the intent of the parties.
However, where the intent of the parties is doubtful or where a condition would impose an absurd or impossible result then the agreement will be interpreted as creating a covenant rather than a condition.
In re Estate of Boyar, 592 So.2d at 343.
Looking to the plain language in Section I of the agreement, there is no indication that any provision in that section was intended to be a condition precedent to the contract's validity. The payment of the first mortgage was not an obligation that must have occurred before there was a right to some performance on the part of either the wife or the husband. Thus, the agreement is binding on the husband, and we reverse and remand for the trial court to reconsider and recalculate the parties' obligations accordingly.
The wife argues next that the trial court erred in imputing her prior income to her at $77,000.00 per year, and claims that the trial court should have imputed income to her in the amount of $30,000.00 per year, based on her testimony that she can earn only that amount. We agree that the trial court erred in imputing income to the wife in the amount of $77,000.00 per year.
Section 61.30(2)(b), Florida Statutes (2006), mandates:

*608 Income on a monthly basis shall be imputed to an unemployed or underemployed parent when such employment or underemployment is found to be voluntary on that parent's part, absent physical or mental incapacity or other circumstances over which the parent has no control. In the event of such voluntary unemployment or underemployment, the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community; however, the court may refuse to impute income to a primary residential parent if the court finds it necessary for the parent to stay home with the child.
As explained by this court in Brown v. Cannady-Brown, 954 So.2d 1206 (Fla. 4th DCA 2007):
The standard of review governing a trial court's imputation of income is whether the determination is supported by competent, substantial evidence. See Schram v. Schram, 932 So.2d 245, 249 (Fla. 4th DCA 2005).
Although the trial court is free to determine the credibility of witnesses, restraints on imputation exist in the form of a required two-step analysis. First, the trial court must conclude that the termination of income was voluntary; second, the court must determine whether any subsequent underemployment "resulted from the spouse's pursuit of his own interests or through less than diligent and bona fide efforts to find employment paying income at a level equal to or better than that formerly received." See Konsoulas v. Konsoulas, 904 So.2d 440, 443 (Fla. 4th DCA 2005) (quoting Ensley v. Ensley, 578 So.2d 497 (Fla. 5th DCA 1991)). In any event, the trial court may only impute a level of income supported by the evidence of employment potential and probable earnings based on history, qualifications, and prevailing wages. See id. Schram, 932 So.2d at 249-50.
Brown, 954 So.2d at 1207-08.
The first part of the Schram analysis requires the trial court to conclude that the termination of income was voluntary. The trial court in the instant case concluded that the wife voluntarily terminated her employment with the Miami-Dade Police Department. The wife does not dispute that her termination was voluntary. Thus, we proceed to the second part of the analysis.
The second part of the analysis requires the trial court to "determine whether any subsequent [unemployment or] underemployment `resulted from the spouse's pursuit of his own interests or through less than diligent and bona fide efforts to find employment paying income at a level equal to or better than that formerly received.'" Schram, 932 So.2d at 249-50 (citations omitted). The trial court in the instant case concluded only that "[t]here was no evidence of any physical or mental incapacity that prevented the [w]ife from being gainfully employed." When imputing income to the wife, the trial court failed to make the requisite findings concerning the wife's recent work history, her occupational qualifications, and the prevailing earnings in the community for that class of available jobs. See Brown, 954 So.2d at 1208-09. If a trial court fails to make these requisite findings, the record must reveal competent, substantial evidence supporting the trial court's imputation. Id. at 1209.
The record in the instant case does not contain competent, substantial evidence to support the trial court's imputation of income to the wife at the level of her most *609 recent salary. The wife's uncontradicted testimony was that she could not return to work in the same capacity. She testified that her police officer certification expired and she was not re-certified yet, but was in the process of doing so. She stated that she could not return to making $77,000.00 per year because she was in a high-risk program and could not re-enter the police force at that level. The wife testified that she applied for numerous jobs with UPS, FedEx, the public school system, the City of Palm Beach Gardens, and Wendy's, but had not been offered a job to date. The average starting salary of these positions is approximately $40,000.00. The wife stated that she could work as a temporary teacher, making $70.00 per day because she received her eligibility to get her teaching certificate, and she could later earn $30,000.00 a year as a full-time teacher. Further, in Brown, this court recognized that "the spouse claiming that the other spouse is voluntarily unemployed or underemployed bears the burden of proof." Id. at 1208 (citation omitted). The husband did not present any evidence on this issue. Also, as noted in Woodard v. Woodard, 634 So.2d 782 (Fla. 5th DCA 1994): "Past average income, unless it reflects current reality, simply is meaningless in determining a present ability to pay. Past average income will not put bread on the table today." Id. at 783.
Therefore, we reverse and remand on this issue for the trial court to revisit the imputation of income to the wife, and the parties' obligations that depend on that figure.
The husband raises two arguments on cross-appeal. First, he contends that the trial court failed to equitably distribute approximately $200,000 of the wife's liquidated retirement assets that he claims "remain[ed] missing and completely unaccounted for" after the final judgment was entered, and failed to account for the wife's gross waste of her pension funds. We need not reach this issue in light of our conclusion that the trial court erred in finding the agreement not binding on the husband. By signing the agreement, the husband explicitly waived his rights and interests concerning the wife's pension plan.
The husband's second and final argument is that the trial court abused its discretion in ordering the parties to share tax liability on the wife's liquidated pension funds. We agree. The agreement provides that the wife receives a special equity in part because of the tax liability she would incur in withdrawing funds from her retirement account. Thus, because the agreement is binding on the husband, the wife is solely responsible for the tax liability arising from the money used to pay for the mortgage ($216,000) because she will receive a special equity in the equitable distribution.
Moreover, the husband should not share in the tax liability for the remaining retirement funds ($450,000). Because he has waived his right to the funds, he will not benefit from them, and thus, should not be responsible for the corresponding tax liability. See Pierre-Louis v. Pierre-Louis, 715 So.2d 1073 (Fla. 3d DCA 1998) (recognizing that the party who primarily benefited from income for taxes that are due and owing, should be declared exclusively responsible for the tax liability, penalty and interest).
Accordingly, we reverse and remand for further proceedings consistent with this opinion.
Reversed and Remanded.
KLEIN and DAMOORGIAN, JJ., concur.