**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-14205

————————————————

QUIN E. BRISCOE,

*Plaintiff-Appellee,*

*versus*

TRANSAMERICA PREMIER LIFE INSURANCE COMPANY,
    an Iowa Corporation, successor by merger
    to Peoples Benefit Life Insurance Company,
    an Iowa corporation,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:23-cv-81577-RMM

————————————————

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

This appeal is about an annuity contract. Quin Briscoe purchased an annuity that gave her control over several variables affecting the investment's outcome. First, she could terminate the annuity contract and receive a lump sum payment. Second, she could delay her annuity date and postpone receipt of annuity payments. Or third, she could allow the annuity to annuitize and collect annuity payments in accordance with one of five Annuity Payment Options. The contract set the default "Annuity Date" as December 1, 2022—the first day of the month following her 65th birthday—but it did not specify a default annuity payment option. And Briscoe never selected one. Nevertheless, in December 2022, Transamerica annuitized Briscoe's annuity and began disbursing annuity payments in accordance with one of the annuity payment options. Briscoe tried to undo the annuitization, but Transamerica refused. Briscoe sued.

The district court determined that Transamerica's unilateral annuitization of Briscoe's annuity was invalid because Briscoe never selected an annuity payment option. We agree and affirm.

## I.

In 1996, Frank and Quin Briscoe each purchased $50,000 Vanguard annuities. But unlike most purchasers of annuities, the Briscoes never intended to allow theirs to annuitize. Instead, they purchased the annuities to take advantage of tax benefits associated with annuity accounts, and they planned to fully liquidate them

upon retirement, prior to annuitization. The Briscoes later contributed an additional $150,000 to each annuity, bringing each annuity's total basis to $200,000.

In 2020, Vanguard transferred the Briscoes' annuities' servicing responsibilities to Transamerica. In 2021, upon reaching his 65th birthday, Mr. Briscoe liquidated his annuity before it annuitized. But in 2022, upon reaching her 65th birthday, Mrs. Briscoe took no action. Shortly thereafter, Transamerica annuitized Mrs. Briscoe's contract and began disbursing annuity payments.

Mrs. Briscoe contacted Transamerica multiple times, insisting that they improperly annuitized her annuity and requesting that it be reversed. In response, Transamerica stated that her "failure to select a payout option resulted in default annuitization consistent with the policy language." Doc. 122-12 at 1. Transamerica refused to reverse the annuitization.

### A.    Briscoe's Annuity Contract

Several of the annuity contract's terms are relevant to this appeal, including its integration clause, "Annuity Date" definition, "Annuity Payment Option" selection scheme, withdrawal provision, and amendment language.

First, the contract contains an integration clause that integrates the contract itself, along with the written annuity application and attached provisions, as follows:

> **Entire Contract.** The Contract, together with the written application and any attached provisions, constitutes the entire contract between the Owner and the Company. No agent may change this Contract or waive any of its provisions. No change in the Contract is valid unless approved by an executive officer of the Company and evidenced by endorsement hereon, or by an amendment hereto signed by such officer.

Doc. 119-1 at 14. The annuity application, in turn, incorporates the annuity prospectus for a single, limited purpose—to establish the conditions for "Telephone Exchange Authorization" (*i.e.*, the rules establishing how the Annuity Owner can give trading instructions over the telephone). Accordingly, the fully integrated annuity contract consists of the contract itself, the annuity application, and the prospectus's "Telephone Exchange Authorization" instructions; it does not incorporate the prospectus.

Second, the annuity contract contemplates that Briscoe's invested funds would grow over time and then annuitize at some point in the future. The contract specifies that the "Annuity Date" is December 1, 2022, which it later also identifies as the "Normal Annuity Date." Further, it separately defines "Annuity Date" as "[t]he date on which Annuity Payments begin." *Id.* at 5. However, the contract also permits Briscoe to advance or defer the Annuity Date, as follows:

> Advanced or Deferred Annuity Date: The Owner may choose to advance or defer the Annuity Date. This request must be made in writing at least 30 days

> prior to the requested Annuity Date, and may only be made during the Annuitant's lifetime. In no event may the Annuity Date be deferred to a date later than the first day of the month following the Annuitant's 85th birthday.

*Id.* at 10.

Third, the annuity contract states that, upon reaching the Annuity Date, Briscoe will receive "Annuity Payments," which are "made monthly." *Id.* at 5, 10. There is no default annuity option. Instead, the contract gives Briscoe the sole authority to "elect" from among five "Annuity Payment Options" to receive her Annuity Payments. *Id.* at 5, 13. Each of the five Annuity Payment Options carries a different set of risks and benefits, as follows:

> 1. Life Annuity – Monthly Annuity Payments are paid for the life of an Annuitant, ceasing with the last payment due prior to his death.

> 2. Life Annuity with 120, 180, or 240 Monthly Payments Certain – Monthly Annuity Payments are paid for the life of the Annuitant for 120, 180, or 240 months as elected.

> 3. Installment or Unit Refund Life Annuity – Monthly Annuity Payments are paid for the life of an Annuitant, with a Period Certain determined by dividing the Accumulated Value by the first Annuity Payment.

4. Joint and Last Survivor Annuity – Monthly Annuity Payments for the life of two Annuitants and thereafter for the life of the Survivor, ceasing with the last payment due prior to the Survivor's death.

5. Designated Period Annuity – Monthly Annuity Payments are paid for a Period Certain, as elected, which may be from 10 to 30 years.

*Id.* at 13. Because each of the Annuity Payment Options differs in how it calculates Annuity Payments, it is impossible to calculate the value of each payment before the Annuity Owner selects an Annuity Payment Option.

Even though the contract does not specify the default Annuity Payment Option, the 1996 Annuity Prospectus does. Specifically, the prospectus states that "[i]n the event that an Annuity Payment Option is not selected, the Company will make monthly Annuity Payments that will go on for as long as the Annuitant lives (120 payments guaranteed)," which corresponds with the contract's payment option number two. Doc. 47-4 at 39. But because the Annuity Contract does not integrate the 1996 prospectus (aside from the "Telephone Exchange Authorization" instructions discussed above), the prospectus's default annuity date is not integrated into the contract.

Fourth, the contract provides that Briscoe may make "[p]artial or full withdrawals . . . at any time before the Annuity Date" and that those withdrawals may be made "in a lump sum" or "paid out under an Annuity Payment Option." Doc. 119-1 at 9. It further

specifies that, in the event of Briscoe's death prior to the Annuity Date, Transamerica will pay out the greater of the annuity's accumulated value as of the date of her death or the sum of all premium payments, minus applicable adjustments and taxes.

Fifth, the contract states that Transamerica may amend the contract "from time to time by notifying [Briscoe] in writing." *Id.* at 15. The changes may be made without Briscoe's approval, "as long as the change does not result in a claim or benefit being reduced or denied to the Annuitant or Beneficiary as of the date of the change." *Id.*

### B.     Briscoe Sues Transamerica

Briscoe sued Transamerica in state court, alleging that Transamerica breached the annuity contract by disbursing annuity payments under a payout option that "it had no right to choose." Doc. 6-1 at 5. She requested a declaratory judgment stating that Transamerica's annuitization was improper and specific performance to reverse the annuitization. Transamerica removed the case to federal district court. Following a bench trial, the district court determined that Transamerica breached the annuity contract and ordered it to reverse the annuitization.

Transamerica appealed. In response, Briscoe filed a motion for sanctions against both Transamerica and its counsel under Federal Rule of Appellate Procedure 38 and 28 U.S.C. § 1927, arguing that this appeal is without merit and was made in bad faith.

## II.

Transamerica argues that the contract is ambiguous about what should be done if no Annuity Payment Option is selected and that, upon consideration of extrinsic evidence, the facts establish that the parties expected Annuity Payment Option number two as a default. Briscoe argues that the "plain language of the Contract does not permit annuitization until a Payment Option is selected." Appellee's Br. at 25. We agree with Briscoe.[1]

The contract is not ambiguous in any way that matters here. Under the contract, the Annuity Owner—not the insurance company—has the contractual right to select the Annuity Payment Option. And the selection of an Annuity Payment Option is a condition precedent to the insurance company's obligation to annuitize and make Annuity Payments. Indeed, all agree that it is impossible for Transamerica to make monthly Annuity Payments without choosing one of the five Annuity Payment Options. Because no selection occurred, the insurance company was wrong to pick a pay-

---

[1] "On an appeal from a judgment in a bench trial, we review the district court's conclusions of law *de novo*." *U.S. Commodity Futures Trading Comm'n v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1322 (11th Cir. 2018). "Contract interpretation is subject to the same *de novo* review." *Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219 (11th Cir. 2015). "Because insurance policies are considered contracts, '[i]nterpretation of insurance policy language is [also] a matter of law, subject to *de novo* review.'" *Id.* (quoting *Graber v. Clarendon Nat'l Ins. Co.*, 819 So.2d 840, 842 (Fla. Dist. Ct. App. 2002)).

out option itself and annuitize the contract. The district court correctly restored the status quo ante before the annuitization occurred.

We believe this is the correct reading of the contract for three reasons. First, the Annuity Owner, not the company, has the sole right to choose the Annuity Payment Option and Annuity Date. Second, there are only two restrictions on the Owner's right to delay the Annuity Date and neither are implicated here. And, third, the insurance company cannot factually or legally make Annuity Payments without someone *first* choosing an Annuity Payment Option.

*A.*

We will start with who has the right to select the Annuity Date and Annuity Payment Option. There is no dispute that the contract gives the Annuity Owner the right to select both (1) the Annuity Date—or when the contract annuitizes—and (2) the Annuity Payment Option. The fully integrated contract gives Transamerica no right to dictate either variable.

The contract itself is clear that the Annuity Date and Annuity Payment Option are established by Briscoe alone. The contract specifies that the Contract Owner may "advance or defer" the Annuity Date and that they may "elect" their preferred Annuity Payment Option. Doc. 119-1 at 10, 13. It does not provide the insurance company with an express or implied reciprocal right. And neither party disputes that the right to select both variables belongs to Bris-

coe either. Transamerica acknowledges that the contract contemplates that the Annuity Owner may advance or defer the Annuity Date and that she may "select a Payment Option." Appellant's Br. at 40–41. Briscoe agrees.

Relatedly, although the contract does provide a default Annuity Date, there is no dispute that the contract does not contain a default Annuity Payment Option. The contract's integration and amendment provisions undermine any argument to the contrary.

First, as to the integration clause, the annuity contract is very clear as to what it integrates. The "Entire Contract" provision explicitly integrates only the written application and attached provisions (which, as discussed above, include only the prospectus's "Telephone Exchange Authorization" instructions). Accordingly, because the contract's plain meaning is specific about what it integrates, we would violate our duty to faithfully interpret the contract if we permitted a non-integrated provision—such as a default payment method established in the prospectus—to bind the parties here. *See Fla. Atl. Univ. Bd. of Trs. v. Harbor Branch Oceanographic Inst. Found., Inc.*, 423 So. 3d 842, 851 (Fla. 2025) (noting that we will not rewrite the parties' contract).

Second, the annuity contract outlines how Transamerica can amend the contract if it wants. The "Contract Amendment" clause authorizes the insurance company to "change [the] [c]ontract from time to time by notifying [Briscoe] in writing." Doc. 119-1 at 15. Had Transamerica wished to set a default Annuity Payment Option by amending the contract, it certainly had the authority to

do so, provided that it complied with its duties under the "Contract Amendment" provision. Because Transamerica could have remedied any purported ambiguity before it materialized by amending the contract, we decline to now modify the contract in its favor by looking to extrinsic evidence to set a default payment method.

*B.*

In addition to the Owner's right to set the Annuity Payment Option, the Annuity Owner has complete discretion to vary from the default annuity date with only two meaningful caveats. First, the Annuity Owner may not advance the Annuity Date to any date later than the first day of the month following their 85th birthday. And second, their "request" to "advance or defer the Annuity Date . . . must be made in writing at least 30 days prior to the requested Annuity Date." Doc. 119-1 at 10.

Transamerica argues that this language should be read to say that Briscoe must give 30 days' notice before the default Annuity Date in order to extend that date. We disagree. This language plainly says nothing about a deadline to defer the default Annuity Date. Instead, it requires the Annuity Owner to provide the insurance company with 30 days' notice before the "*requested* Annuity Date"—*i.e.*, the date to which the Owner is electing to defer the start of their Annuity Payments.

Our reading makes more sense than Transamerica's reading in light of the full clause. The clause states that to advance or defer the Annuity Date, the owner's "*request* must be made in writing at least 30 days prior to the *requested* Annuity Date." *Id.* (emphasis

added). The double use of "request" and "requested" indicates that the "requested Annuity Date" is simply the Annuity Owner's newly elected date; the 30-day advance "request" does not refer to some unrelated "Annuity Date," such as the default date. And this makes sense as a practical matter, too. The 30-day notice period provides the insurance company with sufficient time to calculate annuity payments and prepare those funds for disbursement.

Our reading is also underscored by the fact that the contract separately defines the default Annuity Date as the "Normal Annuity Date," which was December 1, 2022. Because the contract specifically defines "Normal Annuity Date," if the "Advanced or Deferred Annuity Date" clause were to mean what Transamerica contends that it does, it would have used "Normal Annuity Date" instead of "requested Annuity Date." Indeed, it defines "Normal Annuity Date" in the paragraph immediately preceding the "Advanced or Deferred Annuity Date." In other words, the contract *could* have provided that the Owner may modify the Annuity Date by written request "at least 30 days prior to the Normal Annuity Date." But because the clause instead referred to the "requested Annuity Date," the plain meaning of which does not equate to "Normal Annuity Date," we decline to endorse Transamerica's reading of the Annuity Date modification provision. *See Grant v. State Farm Fire & Cas. Co.*, 638 So. 2d 936, 937 (Fla. 1994) (noting that we are to give effect to contract-specific definitions).

C.

Finally, as both a factual and legal matter, it is impossible to disburse an Annuity Payment under the contract without first selecting which payout method will be used to calculate that payment. Transamerica conceded as much at oral argument when it agreed that it can know how much to write on an annuitant's monthly check only by applying the calculation method dictated by the annuitant's chosen Annuity Payment Option. The contract's definition of "Annuity Date" as "[t]he date on which Annuity Payments begin" strengthens this conclusion. Doc. 119-1 at 5. That Annuity Date cannot occur unless Annuity Payments can be disbursed, and they cannot be disbursed without first knowing which Annuity Payment Option to apply.

These features of the contract make an annuitant's Annuity Payment Option selection a classic condition precedent. "Under well-established contract law, a condition precedent is a condition which calls for the performance of an act after a contract is entered into, upon the performance or happening of which its obligation to perform is made to depend." *Racing Props., L.P. v. Baldwin*, 885 So. 2d 881, 882–83 (Fla. Dist. Ct. App. 2004). "A condition may be either a condition precedent to the formation of a contract or a condition precedent to performance under an existing contract." *Mitchell v. DiMare*, 936 So. 2d 1178, 1180 (Fla. Dist. Ct. App. 2006). "Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance

and before there is a breach of contractual duty." *Land Co. of Osceola Cnty., LLC v. Genesis Concepts, Inc.*, 169 So. 3d 243, 247 (Fla. Dist. Ct. App. 2015) (citation modified).

Transamerica should not have annuitized Briscoe's annuity because the relevant condition precedent—Briscoe's selection of the Annuity Payment Option—never occurred. Briscoe's complaint requested a declaratory judgment that she "retains both the right to choose her Annuity Date . . . and retain[s] the right to choose which payment option per the Contract she desires should she not demand liquidation of her investment." Doc. 6-1 at 6. The district court answered both questions in Briscoe's favor, and we agree. There are seven options that an Owner has under the contract when it comes to the Annuity Date: the five options for annuitization, advancing the annuity date, and delaying the annuity date. The first six options work only if the Owner makes a choice. So the seventh option—delay—is the contract provision that covers the failure to make a choice. Because there was no selection that would allow annuitization, the Annuity Date is deferred. Under the contract, Briscoe may annuitize her contract with 30 days' notice, provided that the Annuity Date does not extend beyond the first day of the month following her 85th birthday.

### III.

For the foregoing reasons, we **AFFIRM** the district court's determination that Transamerica's annuitization of Briscoe's annuity was improper. We **DENY** Briscoe's motion for sanctions against both Transamerica and its counsel.

Separately, after oral argument, Transamerica's counsel submitted a Federal Rule of Appellate Procedure 28(j) letter, advising the panel of additional evidence, which it claims favors its position. Because the 28(j) letter does not cite "pertinent and significant authorities" and instead seeks to introduce new evidence, Transamerica's filing of this Rule 28(j) letter was improper. Nevertheless, we construe Transamerica's 28(j) letter as a motion to supplement the record on appeal, and we **DENY** that motion.

24-14205          Luck, J., Dissenting in Part          1

Luck, Circuit Judge, concurring in part and dissenting in part:

Quin Briscoe sued Transamerica Premier Life Insurance Company for two breaches of her annuity contract. The first breach, she alleges, happened when Transamerica commenced her annuity payments—annuitizing the contract—on December 1, 2022 (which was the first of the month after she turned sixty-five). (This is the payment-commencement breach.) And the second breach, she claims, happened when Transamerica selected the payment method for her annuity payments. (This is the payment-method breach.) Looking at the plain, unambiguous terms of the annuity contract, as we must,[1] Transamerica did not breach the contract when it commenced the annuity payments on December 1, 2022. But it did breach the contract when it selected the payment method for Briscoe.

As to the payment-commencement breach, before Briscoe could sign the contract, she had to make several calls about her annuity. She had to: choose her primary and secondary beneficiaries; select her initial purchase payment and her method of purchase; decide if she wanted telephone authorizations; and request the date her annuity payments would commence. For the date of her annuity payments, the "Commencement of Annuity Payments" provision in the contract gave her two options. Option one had her

---

[1] *See Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 785 (Fla. 2004) ("If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written.").

2                    Luck, J., Dissenting in Part                    24-14205

"begin receiving [a]nnuity [p]ayments on the first day of the month . . . which follows [her sixty-fifth] birthday."   Option two was to "request either a specific age or year . . . to begin receiving [a]nnuity [p]ayments."  Briscoe requested the first option—December 1, 2022, which was the first of the month after she turned sixty-five.  Her request was memorialized in the "Contract Schedule."

Still, the contract allowed Briscoe to "amend this election in the future" by deferring the annuity date "in writing at least [thirty] days prior to the requested [a]nnuity [d]ate."  But she didn't do so.  She did not defer the annuity date thirty days before December 1, 2022—the day she "requested" when she signed the contract—so the annuity payments commenced on that day.

The payment-method breach is a different story.  The annuity contract only allows one party to select the method of payment—Briscoe.  Briscoe, the contract says, "may elect that [a]nnuity payments be received on a fixed basis, a variable basis, or some combination of both."   The contract does not authorize Transamerica to select the payment method.  Because it did, Transamerica breached the method-of-payment provision.

★        ★        ★

For two reasons, the majority opinion reaches the opposite conclusion on the payment-commencement breach.  First, it says, the contract allows Briscoe to defer the date she starts receiving her annuity payments to whenever she requests (up to her eighty-fifth birthday).  But this reading conflicts with the other provisions in the contract.  *Cf. Grovehurst Homeowners Ass'n v. Stone Crest Master*

24-14205            Luck, J., Dissenting in Part            3

*Ass'n*, 365 So. 3d 1282, 1285 (Fla. Dist. Ct. App. 2023) ("We construe contractual language by reading it in common with other provisions of the contract." (citation modified)).  The deferral provision allows Briscoe to "advance or defer the [a]nnuity [d]ate."  The "[a]nnuity [d]ate" is the "date on which [a]nnuity [p]ayments begin."  When she signed the contract, Briscoe requested that she "begin receiving [a]nnuity [p]ayments on" December 1, 2022—"the first day of the month which follows [her sixty-fifth] birthday."  Once payments commenced on that day, Briscoe was no longer able to defer the annuity date.  It already happened.  She can't defer something that has already started just as she can't defer a race where the starting shot has already been fired.

Take, for example, the "Withdrawals" provision in the annuity contract.  That provision allows Briscoe to make "[p]artial or full withdrawals" of the money she paid into the annuity "any time before the [a]nnuity [d]ate."  But after the annuity date, "[n]o partial or full withdrawal may be made."  Reading the contract, as the majority opinion does, to let Briscoe defer the annuity date to any time (up to when she's eighty-five)—including after payments have already commenced on December 1, 2022—would allow her to collect monthly payments and then withdraw all the money she paid into the annuity for those monthly payments.  But that would mean the contract is no longer an annuity.  *See Avila v. Biscayne 21 Condo., Inc.*, 417 So. 3d 434, 438 (Fla. Dist. Ct. App. 2025) ("We do not read terms to create absurd results.").

4                 LUCK, J., Dissenting in Part                 24-14205

Second, the majority opinion explains, the contract's method-of-payment provision is a condition precedent to starting the annuity payments. Because Briscoe did not select her payment method, the explanation continues, the condition precedent was never met and her annuity payments should not have commenced, which means Briscoe still had the option to defer the annuity date anytime until she's eighty-five. But the problem with reading the method-of-payment provision as a condition precedent is that, under Florida law, "[p]rovisions of a contract will only be considered conditions precedent . . . where the express wording of the disputed provision conditions . . . performance of the contract on the completion of the conditions." *Gunderson v. Sch. Dist. of Hillsborough Cnty.*, 937 So. 2d 777, 779 (Fla. Dist. Ct. App. 2008) (citation modified); *Raban v. Federal Express*, 13 So. 3d 140, 144 (Fla. Dist. Ct. App. 2009) (citation modified) (same). That's the rule in Florida because "[c]onditions precedent are not favored." *Raban*, 13 So. 3d at 144. While no magic words are required, the express wording of the disputed provision must usually include "such terms as 'if', 'provided that', 'on condition that', or some other phrase that conditions performance." *In re Estate of Boyar*, 592 So. 2d 341, 343 (Fla. Dist. Ct. App. 1992) (quoting *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976)); *Chipman v. Chipman*, 975 So. 2d 603, 607 (Fla. Dist. Ct. App. 2008) (same).

Here, the method-of-payment provision has none of these usual words or phrases. No "ifs" or "provideds" or "conditions." The provision has no express wording conditioning annuitization on selecting the payment method. All the provision says is that

24-14205          Luck, J., Dissenting in Part                    5

Briscoe "may elect that [a]nnuity [p]ayments be received on a fixed basis, a variable basis, or some combination of both," and then lists five options. To read into the method-of-payment provision express wording conditioning the annuity date on the selection of the payment method would mean adding words to the contract that are not there. But "we will not rewrite the parties' contract." Maj. Op. at 10 (citing *Fla. Atl. Univ. Bd. of Trs. v. Harbor Branch Oceanographic Inst. Found.*, 423 So. 3d 842, 851 (Fla. 2025)).[2]

⋆     ⋆     ⋆

Because we should not rewrite the annuity contract, I respectfully dissent from the part of the majority opinion affirming the judgment for Briscoe on the payment-commencement breach. But I join the majority opinion in affirming the judgment for Briscoe on the payment-method breach.

---

[2] Perhaps that's why neither party raised the issue—below or here—that the method-of-payment provision was a condition precedent to the annuity date.